Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion issued November 3,
2005














 

     

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NOS. 01-05-00035-CR; 

01-05-00036-CR; & 01-05-00037-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



SHAWNE PHILLIP MCCREARY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 23rd District Court

Brazoria County, Texas

Trial Court Cause Nos. 44,240; 45,440; & 45,798 








 

 

 



MEMORANDUM OPINION

          Appellant Shawne Phillip McCreary pleaded
guilty to three felony offenses without an agreed recommendation for
sentencing.  After a presentence
investigation report (“PSI”) was prepared, the trial court assessed punishment
at seven years’ confinement for the two second degree felony charges, and two
years’ confinement for the state jail felony. 
In one point of error, McCreary contends the trial court intimidated and
improperly coerced him into retracting his request to withdraw his original guilty
pleas.  We affirm.

Factual and Procedural Background

          The State charged McCreary with
possession of one to four grams of methamphetamine with intent to deliver, a
second degree felony, in trial court cause number 44,240; possession of less
than one gram of methamphetamine with intent to deliver, a state jail felony,
in trial court cause number 45,440; and possession of four to two hundred grams
of methamphetamine, a second degree felony, in trial court cause number 45,798.  McCreary appeared before the trial court on
July 26, 2004, waived his right to a trial by jury, and entered guilty pleas to
all three offenses.  The following
transpired at the plea hearing:

THE COURT:       Did you read the indictment?

THE DEFENDANT:       Yes, sir.

THE COURT:       Did
you go over it with Mr. Sharp [defense counsel]?

 

THE DEFENDANT:       Yes, sir.

. . . .

THE COURT:       All
right.  The range of punishment on that
is 2 to 20 and up to a $10,000 fine.  Do
you understand that?

 

THE DEFENDANT:       Yes, sir.

. . . .

THE COURT:       All
right.  The next one is a 2-to-20 and up
to a $10,000 fine . . . .  The next one
is 45,440; and that one is a state jail, 180 days to 2 years and up to a
$10,000 fine.  Do you understand that?

 

THE DEFENDANT:       Yes.

. . . .

THE COURT:       Do
you understand you’re giving up the right to trial by jury by pleading open to
this Judge?

 

THE DEFENDANT:       Yes, sir.

THE COURT:       Do
you understand that -- have you had plenty of time for you and Mr. Sharp to
decide that this is what you want to do here today?

 

THE DEFENDANT:       Yes.

THE COURT:       Do
you understand you’re giving up the right to confront the witnesses against
you?

 

THE DEFENDANT:       Yes, sir.

. . . .

THE COURT:       Do
you understand you’re giving up the right against self-incrimination?

 

THE DEFENDANT:       Yes, sir.

. . . .

THE COURT:       Do
you understand you’re admitting and judicially confessing to the allegations
and facts contained in the indictment, which you told me that Mr. Sharp and you
read and he explained it to you?

 

THE DEFENDANT:       Yes, sir.

THE COURT:       And
you’re agreeing and stipulating that the allegations and facts are true and
correct and could constitute evidence in this case?

 

THE DEFENDANT:       Yes, sir.

THE COURT:       Are
you voluntarily of your own free will pleading guilty to this offense?

 

THE DEFENDANT:       Yes, sir.

THE COURT:       All three of these?

THE DEFENDANT:       Yes, sir.

THE COURT:       Have you ever been treated for mental illness?

THE DEFENDANT:       No, sir.

THE COURT:       Are you in your right mind now?

THE DEFENDANT:       Yes, sir.

THE COURT:       Were
you in your right mind at the time of the commission of these offenses?

 

THE DEFENDANT:       Yes, sir.

THE COURT:       Do
you understand your plea -- is your plea entered with any consideration of
fear?  Anybody threatened you in any
manner?

 

THE DEFENDANT:       No, sir.

THE COURT:       Is
your plea entered without persuasion of an improper nature?

 

THE DEFENDANT:       No.

THE COURT:       Nobody
promised you anything they shouldn’t have promised, right?

 

THE DEFENDANT:       No.

. . . .

THE COURT:       And you went to the tenth grade in school?

THE DEFENDANT:       Yes, sir.

THE COURT:       You
can read, write, and understand the English language?

 

THE DEFENDANT:       Yes, sir.

. . . .

THE COURT:       Do
you understand it’s up to me whether I accept the deal?  There is no deal.  It’s up to me totally what I do with
you.  Okay?

 

THE DEFENDANT:       Yes, sir.

THE COURT:       And,
David [defense counsel], he’s sane and competent, isn’t he?

 

MR. SHARP:        Yes, sir.

THE COURT:       Okay.  I’ll find you sane and competent.  How do you want to plead?

 

THE DEFENDANT:       Guilty, sir.

The State then offered into evidence,
without objection, three affidavits of admonitions executed by McCreary on July
26, 2004.  In each affidavit, McCreary states
that the trial judge admonished him as to the range of punishment; that the trial
judge admonished him concerning his right (1) to be indicted by a grand jury, (2)
to have the indictment read aloud, (3) to have a trial by jury, (4) to wait ten
days to allow his court-appointed attorney to prepare for trial, (5) to be confronted
by the witnesses against him, and (6) to be free from self-incrimination; that
he waives all these rights; that he admits and judicially confesses to the
allegations and facts contained in the indictments; that he “voluntarily, of
[his] own free will, plead[s] guilty”; that he has never been treated
for any mental illness, is sane, and was sane at the time he committed the
offenses; that his pleas are entered “without any consideration of fear” and
that he has not “been threatened in any manner whatsoever”; that his pleas are
entered without any persuasion and that he was promised nothing for entering
such pleas; that he completed the tenth grade and can read, write, and
understand English; and that he is aware of the consequences of his pleas.  McCreary’s attorney also executed the
affidavits, stating that in his opinion, McCreary “understands the admonitions
and is aware of the consequences of the plea[s].”

The trial court accepted McCreary’s
pleas, and deferred assessing punishment until after the return of the PSI.  On September 15, 2004, McCreary appeared
before the trial court for sentencing. 
The following transpired at the sentencing hearing:

THE JUDGE:        Okay.  Are we ready to proceed on Cause Nos. 44,240
and 45,440 and 45,798?

 

. . . .

THE DEFENDANT:       Sir, I’d like to withdraw my plea.

THE JUDGE:        You want a trial on this thing?

THE DEFENDANT:       Well,
sir, I just feel that my rights have been -- my constitutional rights have been
violated.

 

THE JUDGE:        How?

THE DEFENDANT:       As
far as there is a lot of conflict of interest here, because one of the
investigators here is married to the mother of my daughter.

 

. . . .

THE JUDGE:        You
can do whatever you want to, but here’s what I’m going to explain to you.  Okay?

 

. . . .

THE DEFENDANT:       I
feel that I will be eligible for probation. 
You know, I have no felony convictions.

 

THE JUDGE:        Okay.  So you want to go ahead and try this case --
or these three cases?

 

THE DEFENDANT:       Well,
I just didn’t -- I haven’t quite understood why I wasn’t eligible for probation
and why they come in with such a harsh -- such a harsh --

 

. . . .

THE JUDGE:        If
you want to roll the dice on that, you know, it’s a 2 to 20 deal, and if you’ve
never been before convicted of a felony in this or any other state, you can
certainly try the case.  The problem you’ve
got, you’ve got to try three of them.

 

. . . .

THE DEFENDANT:       Basically,
sir, I mean, I feel that -- you know, with probation I feel that, you know,
that would be just punishment.  I mean --

 

THE JUDGE:        No
skin off my nose.  We’ll let him withdraw
his plea.  Okay.  We’ll put it back on the trial docket.  When y’all want to try it?

 

. . . .

THE DEFENDANT:       That’s
another thing.  I mean, I just don’t feel
I’ve been represented to my best interest. 
I’m just asking for probation out of this deal, sir.  I mean, you know, these people have made me
out to be somebody that I’m not, you know. 
Yes, sir, I have used drugs before, but I feel that they put me in these
predicaments here that I’m on these cases. 
I mean, basically all I’m asking for is probation out of the deal, maybe
some help, you know.

 

THE JUDGE:        Well,
I’ll let you withdraw your plea, then. 
All right.

 

THE DEFENDANT:       I mean --

THE JUDGE:        We’ll
just put it back on the -- if you’ll reseal the PSI, Denise, and we’ll get
these three cases all set for trial.

 

THE DEFENDANT:       I
mean, is that -- do I have to do that?  I
mean, I was just basically trying to, you know, show you, sir, that there is
stuff that ain’t right in these cases, sir.

 

THE JUDGE:        And that’s why we have trials.

THE DEFENDANT:       Okay.

THE JUDGE:        Okay?

THE DEFENDANT:       Well,
I don’t want to take it to trial.  I’ll
stay with my plea if that’s what --

 

THE JUDGE:        All
right.  Let me explain to you how it
works.  Okay?

 

. . . .

THE JUDGE:        Right.  Here’s the deal.  Regardless of what the conflicts are between
-- that one of the officers -- and one of the officers removed himself from the
investigation.

 

THE DEFENDANT:       But
it says also right here -- it says but -- it says -- right here it says but
stated that he made contact with a confidential informant.  You know, basically I feel that -- see, me
and Jay grew up together.  I feel that he
knew what he needed to do to get me in a lot of trouble.

 

. . . .

THE JUDGE:        I’m
not going to talk about your case.  I’m
going to talk about just a generic case.

 

. . . .

THE JUDGE:        If
the guy goes out while he’s on bond and picks up another case, his chance of
getting probation is still possible on a plea bargain but far less.  And if he gets a third case, not going to offer
you probation.  Okay?  They’re just not going to offer you probation
generally speaking.  There might be some
situation where they would.  So then a
guy’s looking at 2 to 20.  Now, a guy can
try his cases but -- and if -- if you can keep out the evidence of the other
cases, which you might can because they’re called extreme [sic] offenses.  If you keep them out, then there’s a pretty
good chance that on one of those cases you might get probation, on two of those
cases, but you basically -- if the DA doesn’t want to fold and go ahead if you
get probation on the first case and just give you probation on the other two,
then you’re stuck where you got to try two more cases.  So you stay in jail --

 

THE DEFENDANT:       Sir,
may I stick with my plea, then, and beg for the mercy of the Court, sir . . . .

 

. . . .

THE JUDGE:        So
the only thing is, if it’s not your meth, okay, and if somebody -- if you can
somehow prove that somebody planted it on you or planted it in your apartment
or in your car or whatever the case may be, then -- here’s what it boils down
to.  You can ask the Court to throw
something out if under the law you can prove it was an illegal search or
seizure.  But even if it’s somebody that
has something against you, if they do it legally, you can argue that to a jury
that they -- that it was put up or -- but if you don’t have any evidence of it,
you’re still stuck.  You see what I’m
talking about?  In other words, if I was
a police officer and for some reason I had it out to get you and -- but I
legally -- I legally caught you, the fact that I had a conflict of interest
doesn’t make any difference in that case, other than unless you could convince
the jury that -- that there was something improper about the search.  See? 
The judge will throw out the search if it’s an illegal search.  But he’s not going to throw it out just
because one of the officers is now married to your ex-wife or something like
that.  I mean, here’s what I’d recommend
you do.

 

THE DEFENDANT:       I basically --

THE JUDGE:        Right.  Here’s what I recommend.  You got a 2 to 20 range.  Okay? 
I’ve already told you a generic case. 
Your chances on a plea of getting probation are slim.  If you try it, you’d probably be in jail
quite a while because you -- unless they fold after the first case and if they
-- if you got tagged for time they might -- they might just offer you a deal
time kind of concurrent on the other two. 
But if they don’t and they still want a piece of you, you understand,
they will try you again, and all that time you just --

 

THE DEFENDANT:       Sir,
I’m not really wanting to try this case. 
I just feel that I haven’t been treated fairly --

 

THE JUDGE:        Okay.  I’m trying -- I’m 56 years old, and I’ve got
a lot of experience, and I’m trying to be fair with you.

 

. . . .

THE JUDGE:        Somewhere
under half is what you’re looking at on a 2 to 20 deal.  That’s what you’re hoping for.  Why don’t you go back and -- David Sharp is
not doing a job on you, and he’s not selling you out, because I know the
man.  You see what I’m talking
about?  I mean, if I thought he was a
lawyer that was not competent or was doing a favor to anybody or who was just
taking the easy way out, I wouldn’t say anything like this.  I’d go ahead and I’d appoint you another
lawyer and we’d go to trial or whatever. 
But let me tell you the truth, the man isn’t taking advantage of you and
he’s not putting it to you.  He looked at
your case.  He made a decision based on
the fact you have three cases pending, as I recall, that the chances of going
three times to a jury and getting out unscathed or harmed and that a jury on
meth might just lay it on you -- you see what I’m talking about?

 

THE DEFENDANT:       Yes, sir.

THE JUDGE:        Now,
that’s not saying he thought I was going to be a softy, but it’s saying he had
to make a risk analysis on that thing. 
You know what risk analysis means? 
He had to figure out I’m not sure what Judge May would do but I’m really
afraid that the circumstances are more risk than maybe you’re willing to take
but maybe you’re not willing to take that. 
Maybe you are willing to take the risk. 
It’s not a 5 to 99er.  So you
could try it.  You know, the worst you
could get is 20.

 

THE DEFENDANT:       Sir,
I’d like to stay with my plea and, like I say, beg for the mercy of the Court,
sir, that I could get out there and put my life back together.

 

. . . .

THE JUDGE:        Well,
I don’t want -- I don’t want to make you any false hopes.  Okay? 
I’ve told you in a generic case that it’s probably -- if you took this
case to a hundred judges --

 

THE DEFENDANT:       So I guess I -- this is over?

THE JUDGE:        No,
it’s not over.  You can do whatever you
want, and I’m not prejudging your case.  If
you take it to a hundred judges, if you could get maybe seven of them to grant
you probation you’d be lucky.  Okay?  Where would you end up on that?  Most of them aren’t going to give you the
max.  Okay?  And a few of them are going to -- and very
few of them are going to give you two to do. 
You understand what I’m saying?  But
I’m just telling you you do what you want to do.  I’ll let you withdraw your plea or I’ll let
you go back and talk to David a little bit more.

 

. . . .

THE JUDGE:        But
you do what you want to do.  You know,
I’ll be glad to accommodate you either way. 
It’s your day in court.

 

THE DEFENDANT:       Will you speak with me?

MR. SHARP:        Sure.

THE JUDGE:        Why don’t y’all go back and talk.

After conferring with defense counsel,
McCreary decided to continue with his guilty pleas, and the trial court
assessed punishment at seven years’ confinement in cause numbers 44,240 and
45,798, and two years’ confinement in cause number 44,240, all to run
concurrently.  The State dismissed a fourth
case against McCreary.

Analysis

          McCreary
contends that certain statements made by the trial court, including “roll the
dice,” “so you stay in jail,” “if you can somehow prove that somebody planted
it on you or planted it in your apartment or in your car or whatever the case
may be,” “if you try it, you’d probably be in jail quite a while,” and “the
worst you could get is 20,” were improper and unduly influenced and coerced
McCreary into retracting his withdrawal of his guilty pleas.

          We
examine the record as a whole to determine the voluntariness of a guilty
plea.  Richards v. State, 562
S.W.2d 456, 457 (Tex. Crim. App. 1977); Dusenberry v. State, 915 S.W.2d
947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref’d).  McCreary’s receipt of the statutory
admonishments is prima facie evidence that his pleas were knowing and
voluntary.  Harrison v. State, 688
S.W.2d 497, 499 (Tex. Crim. App. 1985); Williams v. State, 960 S.W.2d
758, 759 (Tex. App.—Houston [1st Dist.] 1997, pet. dism’d).  “When a defendant attests at his original
plea hearing to the voluntary nature of his plea, a heavy burden is placed on
him at a subsequent hearing to show a lack of voluntariness.”  Cantu v. State, 988 S.W.2d 481, 484
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d); Thornton v. State, 734
S.W.2d 112, 113 (Tex. App.—Houston [1st Dist.] 1987, pet. ref’d).

          Moreover,
a defendant does not have a right to withdraw his guilty plea while waiting for
the results of a presentence investigation. 
Jackson v. State, 590 S.W.2d 514, 515 (Tex. Crim. App.
1979).  Where a trial court has found the
defendant guilty and resets the case to await the results of the PSI, the court
has taken the matter under advisement, and the withdrawal of the guilty plea is
within the sound discretion of the trial court. 
DeVary v. State, 615 S.W.2d 739, 740 (Tex. Crim. App. 1981); Russell
v. State, 711 S.W.2d 114, 117 (Tex. App.—Houston [14th Dist.] 1986, pet.
ref’d).  The duty of a trial court to
withdraw a defendant’s plea arises only if evidence that fairly raises an issue
as to his innocence is present prior to the adjudication of the defendant’s
guilt.  Hernandez v. State, 827
S.W.2d 54, 56 (Tex. App.—Houston [1st Dist.] 1992, no pet.).

          McCreary
does not contend that his guilty pleas at the July 26th hearing were involuntary.  Nor could he, because the record of the July
26th hearing shows McCreary stated in open court that he was pleading guilty voluntarily,
of his own free will, and without any consideration of fear or threats.  McCreary also executed three affidavits of
admonitions declaring in writing that the trial judge had admonished him; that
he was voluntarily, of his own free will, pleading guilty; that his pleas were
entered without any consideration of fear; and that he had not been threatened
in any way.

          Once
the trial court accepted McCreary’s pleas and reset the case to await the
results of the PSI, McCreary no longer had the right to withdraw his guilty
pleas.  Jackson, 590 S.W.2d at 515;
DeVary, 615 S.W.2d at 740. 
Rather, when McCreary entered the courtroom on September 15th and asked
to withdraw his pleas, it was entirely within the trial judge’s discretion
whether to allow McCreary to do so, since McCreary’s request did not involve a
profession of innocence.  Hernandez,
827 S.W.2d at 56.  To the contrary,
McCreary told the trial judge that he had “used drugs before,” but wanted to
withdraw his pleas because one of the investigators in the case was married to
the mother of his daughter, the confidential informant and he grew up together,
and he didn’t understand why he wasn’t eligible for probation.  While the trial judge indicated his
willingness to allow McCreary to withdraw his pleas, the trial judge certainly
would have been within his discretion in disallowing the plea withdrawals.  Jackson, 590 S.W.2d at 515; DeVary,
615 S.W.2d at 740; Hernandez, 827 S.W.2d at 56.

          McCreary
now complains that the trial judge coerced him into retracting his request to withdraw
his guilty pleas.  We disagree.  While a trial judge should carefully avoid
participation in plea negotiations until such time as an agreement has been
reached, if a judge improperly participates in plea negotiations, we do not
reverse if the record indicates beyond a reasonable doubt that appellant’s plea
was voluntary and not a result of judicial coercion.  See Ex parte Shuflin, 528 S.W.2d 610,
615–17 (Tex. Crim. App. 1975).  Here,
although the trial judge admonished McCreary about possible outcomes of a
request to withdraw his plea, it is clear from the record that he did not coerce
McCreary into deciding to plead guilty in the first instance.

          Moreover,
a careful examination of the record reveals that McCreary began waffling on his
withdrawal of his guilty pleas before the trial judge made any of the
allegedly coercive comments.  After
McCreary advised the trial court that he wanted to withdraw his plea, the trial
judge told him, “You can do whatever you want to,” and then asked, “So you want
to go ahead and try this case -- or these three cases?”  Instead of responding in the affirmative,
McCreary showed his first sign of reluctance: “Well, I just didn’t -- I haven’t
quite understood why I wasn’t eligible for probation and why they come in with
such a harsh -- such a harsh[.]”  Only at
this point did the trial judge comment.

          On
the face of the record, McCreary’s decision to continue with his guilty pleas
was voluntary and not the result of judicial coercion.  There is no evidence that the trial judge
coerced McCreary into pleading guilty. 
Rather, the trial judge merely warned McCreary about the danger of
trying three methamphetamine cases, and the judge’s warnings were tempered by
his statements that McCreary had every right to proceed to trial.  The judge made McCreary aware of the maximum
sentence possible and the factors a court would consider in assessing
punishment.  See Gomez v. State,
921 S.W.2d 329, 334–35 (Tex. App.—Corpus Christi 1996, no pet.) (where
appellant wanted to withdraw guilty pleas, deciding that trial court’s
statement “I’m telling you right now that you’re facing a minimum of 25
years.  I can stack all of these things
and keep you in prison for the rest of your life.  If you want to withdraw your plea that’s
fine” was not coercive because “the trial court only wanted to make certain
that appellant did not base his decision on the court’s past leniency and that
he knew exactly what factors the court would consider in determining the
sentence[, and the court merely] stressed the maximum sentence appellant could
receive if he elected to continue with his guilty pleas”).  Moreover, McCreary decided to continue with
his guilty pleas only after conferring with defense counsel.  Based on the record, we conclude McCreary’s
guilty pleas were not a product of judicial coercion.  We therefore overrule McCreary’s point of
error.

Conclusion

          We
affirm the judgments of the trial court.

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).