# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00519-CR

**Lorenzo Castorela-Chavez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. D-1-DC-08-200806, HONORABLE BOB PERKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Lorenzo Castorela-Chavez guilty of one count of aggravated sexual assault and two counts of indecency with a child by contact. *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2003), § 22.021(a)(1)(b)(i) (West Supp. 2008). The trial court assessed punishment at twenty-five years' imprisonment for the count of aggravated sexual assault, twenty years' imprisonment for the first count of indecency with a child, and fifteen years' imprisonment for the second count of indecency with a child, with all three sentences to run concurrently. On appeal, Castorela-Chavez argues that his election to have the court, rather than the jury, assess punishment was involuntary due to the trial court's "improper participation" in plea bargaining discussions. We affirm the judgments of conviction.

# BACKGROUND

At the time of the events giving rise to the current prosecution, Castorela-Chavez was living with Maria Reveles, the mother of two of his children. The couple lived in an apartment with their children, as well as Castorela-Chavez's daughter from another relationship and Reveles's three other children, including thirteen-year-old M.B. Reveles testified that at approximately 2:30 a.m. on February 8, 2008, she awoke to find Castorela-Chavez in M.B.'s bedroom, kneeling next to her bed with his hands underneath her blouse. According to Reveles, she turned on the light and observed Castorela-Chavez touching M.B.'s breasts while she slept. Reveles further testified that when she confronted Castorela-Chavez, he threatened to kill her if she called the police.

When Reveles took her youngest children to school that morning, she told a school employee about what she had seen.[1] At Reveles's request, the school employee called the police and Reveles provided them with a statement, a physical description of Castorela-Chavez, and consent to search her apartment. While officers were searching the apartment, Castorela-Chavez returned home and was arrested. Meanwhile, M.B. was taken to the hospital, where she was examined by Ann Martin, a sexual assault nurse examiner. During the examination, M.B. told Martin that multiple times in the past, Castorela-Chavez had come into her room at night and touched her on both the inside and outside of her vagina with his finger. Martin testified at trial that her examination revealed "abrasions too numerous to count" on M.B.'s vagina. Martin further testified

---

[1] Reveles, who does not speak English, testified that she was afraid to call the police because of Castorela-Chavez's threats. Reveles explained that she confided in this particular school employee because she knew and trusted her and because the school employee spoke Spanish.

that the abrasions looked like they had occurred recently, although she could not estimate how recently.

M.B. testified at trial regarding the touching incidents, describing them with detail. She also described certain looks and actions that Castorela-Chavez had directed at her prior to the incidents, including raising and lowering his eyebrows while beckoning to her and rubbing her leg while sitting next to her on the couch. When asked about the morning of February 8, M.B. testified that she woke up to hear Reveles and Castorela-Chavez arguing, but did not know the reason for their argument. M.B. further testified that she heard Castorela-Chavez threaten to kill Reveles if she "put the police on him."

Castorela-Chavez also testified at trial and denied ever having touched M.B. inappropriately. He stated that when Reveles woke up at 2:30 a.m. on February 8, 2008, he was not in M.B.'s room, as Reveles testified, but was in the bedroom closet, drawing up an estimate for a bid on a construction job. According to Castorela-Chavez, when Reveles woke up and saw that he was not in bed, she assumed he was cheating on her and became angry, so that when she ultimately found him working in the closet, an argument ensued. Castorela-Chavez maintained that Reveles had falsely accused him of touching M.B. because she was angry with him over his relationship with another woman.

After hearing the evidence, the jury found Castorela-Chavez guilty of one count of aggravated sexual assault, one count of indecency with a child by touching M.B.'s vagina, and one count of indecency with a child by touching M.B.'s breasts. *See id.* The court then imposed a sentence of incarceration for twenty-five years, twenty years, and fifteen years, respectively, with the sentences to run concurrently.

## DISCUSSION

In his sole issue on appeal, Castorela-Chavez argues that the trial court's "improper participation" in plea bargain discussions gave him a false impression of leniency, rendering his decision to have the court assess punishment involuntary.

The code of criminal procedure allows a criminal defendant to elect to have the jury assess punishment. Tex. Code Crim. Proc. Ann. art. 37.07 § 2(b) (West Supp. 2008). In the absence of a written election, punishment will be assessed by the court. *See id.* The right to have a jury assess punishment is not a constitutional right, but a statutory one. *See Tinney v. State*, 578 S.W.2d 137, 138 (Tex. Crim. App. 1979) ("There is no constitutional right to have the jury assess punishment.").

Prior to trial, the State offered Castorela-Chavez a plea bargain of eighteen years' imprisonment. Castorela-Chavez rejected this offer and made a counter-offer of four years' imprisonment, which the State rejected. Once both offers had been made and rejected, the following discussion occurred:

COURT:     Had you-all talked to me—or have I ever talked to you-all about anything that I would do unnegotiated or anything?

DEFENSE:   No, sir.

STATE:     No, Your Honor.

COURT:     Okay. I guess the first question, I guess, would be whether or not you're interested in that, or should we go ahead and try it?

DEFENSE:   My client indicated he would like to try the case; however, I'm always anxious to hear what the Court thinks about an offer and thoughts.

4

Attorneys for both sides then provided the court with a brief summary of the allegations and evidence, after which the following discussion took place:

COURT:      Well, I guess the question would be whether or not—I don't know, based on, you know, what you-all are telling me, I guess just because of the fact we have so many people in jail and everything, I might be able to do something like 12 or something like that, but I don't know that that—I guess the first hurdle in that would be whether or not the State, you know, would want to waive a jury trial in that situation or not. If you wouldn't, then, you know, I guess we just need to go ahead and try it.

STATE:      Yeah, I don't believe we want to waive it under those circumstances, Judge.

COURT:      Okay. All right. So, Mr. Castorela[-Chavez], we'll proceed on the arraignment, then, at this time.

A few moments later, defense counsel stated, "And Judge, for the State's benefit, I'd like for the jury to assess punishment . . . ." After a short discussion about how the election would be filed and the proper spelling of the defendant's name, the following exchange occurred:

DEFENSE:    Judge, since we haven't filed the election yet, I think we are going to change that and have you. The motion I drew up was that the jury do punishment, but I've talked to him. It's actually his choice. He says he'd rather the judge assess punishment in the event he is convicted on any of the three counts. So I'm just going to scratch through that on the motion.

. . .

DEFENSE:    Now, he is eligible for community supervision, but—

COURT:      With the jury, yeah.

5

DEFENSE: With the jury. However, I think that any jury that convicts him is not going to give him community supervision given the seriousness of the allegation and also the fact that he's not here legally.

So I think there is much more probability of an adverse result for him if he goes to the jury than if he goes to the Court, given the Court's inclinations regarding punishment already that you have addressed. So we're going to do that just to the Court on punishment.

Castorela-Chavez now argues that the trial court, by stating, "I might be able to do something like 12 or something like that," misled him into believing that the trial court would assess a punishment consistent with that statement in the event the case went to trial. Castorela-Chavez further asserts that this misperception rendered his punishment election involuntary.

Castorela-Chavez did not raise this complaint at sentencing or by a motion for new trial. As a result, his complaint has not been preserved for appellate review. *See* Tex. R. App. P. 33.1; *Dickson v. State*, 492 S.W.2d 267, 270 (Tex. Crim. App. 1973) (stating that defendant can waive statutory rights concerning assessment of punishment). However, in the interest of justice, we will address Castorela-Chavez's complaint.

The court of criminal appeals has held that a trial judge should avoid participation in plea negotiations until an agreement has been reached, in order to "avoid the appearance of any judicial coercion or prejudgment of the defendant since such influence might affect the voluntariness *of the defendant's plea*." *Perkins v. Court of Appeals*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987) (emphasis added); *see also Ex parte Shuflin*, 528 S.W.2d 610, 617 (Tex. Crim. App. 1975). In the present case, the voluntariness of Castorela-Chavez's plea is not at issue because he pleaded not guilty. Rather, he argues that the court's improper participation in plea negotiations rendered his

6

punishment election involuntary. Castorela-Chavez has not provided, nor have we found, any authority to suggest that comments by the trial court during plea negotiations might render a defendant's punishment election involuntary.

Castorela-Chavez relies on *Huffman v. State*, 676 S.W.2d 677, 682-83 (Tex. App.—Houston [1st Dist.] 1984, pet ref'd), in which the court of appeals held that an unfulfilled promise of leniency by the State rendered a defendant's guilty plea involuntary. *Huffman* is distinguishable in two significant ways. First, no promise of leniency was ever made in the present case. Rather, Castorela-Chavez simply made an assumption of leniency based on the trial court's comments. Second, *Huffman*, like all of the cases cited by Castorela-Chavez, addressed the voluntariness of a guilty plea, which has the effect of waiving the constitutional right to a trial by jury on guilt/innocence. *See Brady v. United States*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). Castorela-Chavez's punishment election, on the other hand, did not waive his right to a trial by jury or any other constitutional right, but waived only his statutory right to have a jury assess punishment. *See Tinney*, 578 S.W.2d at 138. As a result, cases in which a trial court's improper participation in plea negotiations affected the voluntariness of a defendant's guilty plea are not applicable to the present case.

The effect of a misstatement by the trial court on a defendant's punishment election was addressed in *Sterry v. State*, 959 S.W.2d 249, 257 (Tex. App.—Dallas 1997, no pet.), in which the court of appeals held that a defendant was deprived of due process because his election to have

7

the court assess punishment was based on the trial court's misstatement regarding the applicable sentencing range for his offense. In the present case, however, the trial court did not misstate the law, but merely suggested, in extremely equivocal language, a punishment that it might consider in the event of an unnegotiated plea. The trial court's statement, "I might be able to do something like 12 or something like that," cannot reasonably be viewed as a firm commitment to sentence Castorela-Chavez to twelve years' incarceration after a trial on the merits.[2]

In light of the fact that the trial court's comments did not convey any promise or guarantee of leniency and that, even if the trial court had "improperly participated" in plea bargain negotiations as Castorela-Chavez suggests, he has provided no authority to support his contention that a punishment election may be rendered involuntary by such participation, we overrule Castorela-Chavez's sole issue on appeal.

---

[2] At the time the statement was made, the trial court had only been given a brief summary of the allegations and the evidence available, and had not yet heard the full extent of the evidence, including Castorela-Chavez's threat to kill Reveles if she reported his actions to the police, M.B.'s testimony regarding the touching incidents and Castorela-Chavez's behavior toward her in general, and the sexual assault nurse examiner's testimony that she observed "abrasions too numerous to count" during her examination. It would not be unreasonable to assume that the trial court considered imposing a sentence in the twelve-year range as suggested prior to trial, but later determined that a longer sentence was warranted. In any event, the record reflects that the trial court never indicated to Castorela-Chavez that the statement, "I might be able to do something like 12 or something like that," was binding or remained effective in the absence of an unnegotiated plea.

We note also that the sentences imposed by the court were well within the applicable ranges of punishment for each offense, as aggravated sexual assault is a first-degree felony, with a maximum sentence of incarceration for life, and indecency with a child is a second-degree felony, with a maximum sentence of twenty years' incarceration. *See* Tex. Penal Code Ann. §§ 12.32-.33, 21.11(d) (West 2003), § 22.021(e) (West Supp. 2008).

8

**CONCLUSION**

We affirm the judgments of conviction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed:   September 24, 2009

Do Not Publish

9