In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00140-CR**
_____

**JERRY SHANE MERRITT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CR31581 (Count 2)**

**MEMORANDUM OPINION**

Appellant Jerry Shane Merritt pleaded guilty to one count of indecency with

a child younger than seventeen by sexual contact. *See* Act of May 18, 2009, 81st

Leg., ch. 260, 2009 Gen. Laws 710 (H.B. 549, § 1 (amended 2017) (current version

at Tex. Penal Code Ann. § 21.11(a)(1)). In three issues, Merritt argues that the trial

court abused its discretion in denying his motion for new trial because his guilty plea

was involuntary. According to Merritt, the alleged errors caused prejudice because

there is a reasonable probability that, but for the complained of conduct of the trial court and of Merritt's plea counsel, he would have gone to trial. We affirm.

Background

Indictment and Plea

In February of 2015, a grand jury indicted Merritt on two counts of indecency with a child younger than seventeen years of age by sexual contact. In a plea hearing on February 13, 2017, the State abandoned Count 2, and Merritt pleaded guilty to Count 2 of indecency with a child by sexual contact. Prior to accepting his plea, the trial court admonished Merritt as to the range of punishment for the offense charged, and in response to the court's questions, Merritt agreed that no one had threatened, forced, or coerced him to plead guilty, that his plea was made freely and voluntarily, and that he was pleading guilty because he was in fact guilty as charged in the indictment and for no other reason. Merritt also agreed that his plea counsel had explained the plea papers to him and that she had answered his questions to his satisfaction. The trial court found Merritt's plea was freely, voluntarily, knowingly, and intelligently made and accepted the plea. The court found Merritt guilty on Count 2 of indecency with a child by sexual contact and assessed punishment at ten years' confinement.

Motion for New Trial

On March 6, 2017, after having obtained new counsel, Merritt filed a motion for new trial in which he argued that his guilty plea was not voluntary because he had been coerced by his plea counsel and by the trial court judge to plead guilty. Merritt requested that his guilty plea be set aside, a hearing be conducted, and the trial court judge be recused. Merritt's motion was supported in part by an affidavit from his plea counsel, wherein she attested in relevant part "I believe that the judge became involved in the plea discussions to send the message that Mr. Merritt should accept the plea bargain. Had I anticipated that the judge would do this, I would have encouraged Mr. Merritt to accept the previous five-year offer." The trial court judge signed an order of voluntary recusal based on his "personal knowledge of evidentiary facts concerning the proceedings[.]"

Hearing on Motion for New Trial

A new judge was appointed to the case, and a hearing on the motion for new trial was held on April 20, 2017.

*1. Testimony of Nancy Botts*

Nancy Botts testified that she had been hired to represent Merritt on two counts of indecency with a child for a fee of $20,000. According to Botts, Merritt gave her more than one check that was not honored by the bank and she testified that

she "probably" told Merritt [] "something like" she would not do any more work on his case until she had been paid. Botts testified that she did not recall telling Merritt that he needed to be prepared to take a plea bargain unless he paid a minimum of $5000 before trial, but that she "may have[]" said he needed to be prepared to take a plea bargain and that he needed to come up with several thousand dollars to pay her fee. According to Botts, Merritt paid her about $2500 at some point prior to the February 2017 proceeding, which she agreed was not an adequate fee for such a case.

Botts testified that Merritt told her he did not commit the crimes alleged in the indictment, that she believed he was innocent and told him so, and she considered his case defensible and winnable. Botts agreed that prior to trial she asked the prosecutor whether he would consider a plea deal and he offered five years. Botts explained that she presented the five-year offer to Merritt and he rejected it. According to Botts, she thought the offer was still available on the date of trial.

Botts explained that on the date of trial, the complainant appeared very emotional and disheveled and was crying. Botts testified that "a crying teenage girl on the witness stand[]" is "always a concern[,]" that she informed Merritt "that juries tend to believe [] crying girls[,]" and she told Merritt there was a "distinct possibility[]" that he could be convicted on the basis of the girl's emotional

testimony rather than the facts of the case. Botts testified at the hearing that she told Merritt at trial that he needed to seriously consider taking five years, that she "didn't think the judge was fair[,]" and that she tried to tell Merritt the risks associated with going to trial. Botts denied that she tried to scare Merritt into taking a plea deal.

Botts explained that, while Merritt was considering the State's offer, Botts approached the prosecutor to see if he would offer less than five years, and the prosecutor told her the offer was now ten years because he had worked on the case over the weekend. Botts testified that she conveyed the ten-year offer to Merritt and his family, and they were upset. Botts explained that she asked the prosecutor again for a five-year deal. The prosecutor informed her he would talk with the complainant and her mother again, but that the deal remained ten years. Botts testified "I didn't try to convince [Merritt]. I -- I told him he needed to talk to his family and they needed to make a decision, and then I walked off so I would not influence it." Botts agreed she told Merritt, "You'll still have a life after you're released from prison if you take the plea bargain[.]" Botts recalled that she told Merritt he would not be eligible for parole before five years. According to Botts, she did not "encourage" Merritt to take the five-year deal because "he just very bluntly rejected it and said no." Botts disagreed that she encouraged Merritt to take the ten-year deal but explained that she "tr[ied] to impart to him the risk that he was taking."

Botts explained that while she was speaking with Merritt and his family, she was told that the judge wanted to see her in chambers. The prosecutor was also present in chambers, but there was no court reporter. Botts testified that the prosecutor informed her that he was going to ask for twenty years if Merritt were convicted and he declined her request to dismiss Count 2 of the indictment. According to Botts, she asked whether the State would seek to stack sentences, and the prosecutor told her "no[,]" but Botts stated that the judge told her "there was a high probability" that the trial court would stack the sentences because that was the court's normal practice. Botts explained that she "absolutely" had an obligation to tell this to her client and that she told the judge she would do so. According to Botts, she did not check court records to verify the judge's sentencing practices. Botts reported to Merritt and his family that the prosecutor indicated he would ask for twenty years and that the judge said he would probably stack the sentences. Botts explained "I -- I was giving him the information. What -- what he chooses to do with it was up to him and his family. I -- I tried very hard to not tell him what to do. That's not my job." Botts testified that she moved away from Merritt and his family while they were discussing the matter. Merritt then accepted the ten-year offer. Botts explained that she told Merritt that he had to tell the judge he was guilty and that his plea was voluntary in order for the court to accept the plea. Botts agreed that the plea

papers included a stipulation of evidence in which Merritt stipulated to the facts in the case and admitted guilt.

Botts agreed that she returned $2000 to his family and she felt "horrible." Botts agreed that she had communicated her concerns about the judge to Merritt but explained "I don't think I had a chance to be ineffective." Botts also agreed that a trial court judge has discretion to stack sentences. On cross-examination, Botts agreed that the decision whether to go to trial is the client's. Botts explained as follows:

> [State's counsel]: Okay. Why didn't you go to trial?
>
> [Botts]: You want my opinion or what happened? We didn't go to trial because he took a plea bargain.
>
> [State's counsel]: Okay. Who made the decision to take the plea bargain?
>
> [Botts]: I assumed he had made it with his family.
>
> [State's counsel]: Did you make it?
>
> [Botts]: No.

State's counsel asked Botts whether there was a possibility of probation from a jury, and Botts replied "No[]" but that she would have to re-read the law on it. Botts agreed that she helped Merritt fill out the plea papers, but she also agreed that she

did not threaten him in any way. When asked whether she coerced Merritt into signing the plea papers, the following exchange occurred:

> [State's counsel]: The initials that Mr. Merritt placed on the forms, did you force him to do it?
>
> [Botts]: No.
>
> [State's counsel]: Did you threaten him in any way?
>
> [Botts]: No.
>
> [State's counsel]: Did you coerce him in any way?
>
> [Botts]: I don't think so. I don't know.
>
> [State's counsel]: You don't know? That's -- that's very curious that you don't know what you did.
>
> [Botts]: If you're asking if I sat there and said "Sign these or else," no, I didn't do that.
>
> [State's counsel]: Well, for a man who came in to court with several days['] worth of clothes for trial and wanted trial, why did he sign these admonishments in the plea?
>
> [Botts]: I think he got scared of what might happen if we lost the trial, and he didn't want to be subjected to the possibility of a 40-year sentence. That's -- that's what I think.

Botts testified that Merritt knew that, by pleading guilty, he would have to serve at least half of his ten-year sentence before he would be eligible for consideration for parole. Merritt's plea papers were admitted as State's Exhibit 1. Botts verified that the trial court questioned Merritt on whether his plea was voluntary and the trial

court admonished Merritt on the consequences of his guilty plea. Botts denied that she forced Merritt to give any of his answers. Botts testified that she had been truthful to the trial court in the plea papers and that Merritt did not indicate to her that he was lying to the judge "at that time." The State also questioned Botts regarding a statement she made in her affidavit as follows:

> [State's counsel]: In your affidavit you state that you believed that Judge Morefield became involved in the plea discussions to send a message that Mr. Merritt should accept the plea bargain.
>
> [Botts]: Yes. That's what I believe.
>
> [State's counsel]: That had you anticipated that Judge Morefield would do this, you would have encouraged Mr. Merritt to accept the previous five year offer. Correct?
>
> [Botts]: Yes.
>
> . . . .
>
> [State's counsel]: You said that you felt bad for Mr. Merritt. Why did you feel bad for Mr. Merritt?
>
> [Botts]: Because of what happened.
>
> [State's counsel]: You didn't have anything to do with what happened, did you?
>
> [Botts]: I'm sorry, I don't know what you mean.
>
> [State's counsel]: You didn't tell Mr. Merritt that you were going to ask the judge to stack?
>
> [Botts]: Of course not.

[State's counsel]: You didn't tell Mr. Merritt that you were going to make sure that he got a maximum punishment, did you?

[Botts]: No.

[State's counsel]: But you didn't go to trial and let a jury determine that, did you?

[Botts]: No.

[State's counsel]: Who made that decision not to go to trial?

[Botts]: Mr. Merritt.

Botts denied that she forced, threatened, or coerced Merritt to take a plea. Botts testified that she did not lie to Merritt, that she had an obligation to tell him what might happen, and that she believed she had rendered effective assistance of counsel. According to Botts, she believed the trial court judge became involved in plea discussions but that the judge had said nothing more than what he might do regarding stacking sentences. According to Botts, she believed the judge's "high probability" remark meant that he was going to stack sentences and she believed the remark was "a threat designed to persuade [Merritt] to take the plea bargain[.]" Botts then stated that in her opinion, Merritt's plea was not voluntary.

Botts agreed that she told Merritt if he did not pay her $5000, he should be prepared to take a plea bargain, but she explained that she was not going to do more work on the case without being paid and she did not intend to coerce Merritt to taking

a plea deal. When asked whether Merritt would have been eligible for probation from a jury, Botts replied "it depends on what the evidence was."

*2. Testimony of Stacy McCarthy*

Merritt's sister Stacy McCarthy testified at the hearing. McCarthy testified that she had come to trial to support Merritt. McCarthy explained that Botts was very "negative about [Merritt] going to trial. She wanted -- she was showing [Merritt] that it was not a good idea. She was pointing out [the complainant], how emotional she was." According to McCarthy, Botts also said the judge was "an unfair judge and [Merritt] was not going to win." In addition, McCarthy explained that Botts previously told Merritt the case was winnable and Botts said she believed he was innocent. According to McCarthy, Botts said that Merritt should not take the plea bargain. McCarthy testified that Botts changed her mind about whether Merritt should take the plea bargain after seeing the complainant's demeanor. McCarthy testified that on the day of the trial Botts conveyed to Merritt and the family that the prosecutor had increased the plea offer to ten years because he had worked on the case throughout the weekend. McCarthy explained that, at that point, Botts was encouraging Merritt to take the offer, Merritt was resistant, and Botts told Merritt "he would not win[,] . . . that he would lose and he would be looking at 20 years."

According to McCarthy, at some point, Botts left to meet with the judge, and when she returned, she was "very agitated[]" and "aggressive" toward Merritt, explaining that the judge would be stacking the charges and that Merritt would get forty years. McCarthy said Botts gave Merritt two minutes to decide what to do. McCarthy testified that when Merritt decided to take the ten-year offer, he was "distraught[]" and "emotional." McCarthy described Botts as "absolutely pushing[]" Merritt. On cross-examination, McCarthy agreed that if Merritt had gone to trial, he could have received a sentence on the two counts of up to forty years.

*3. Testimony of Merritt*

Merritt agreed he was indicted on two counts of indecency with a child younger than seventeen by sexual contact. Merritt testified that he initially told Botts he did not do the crime alleged and he wanted a dismissal or a trial. He agreed that a check he gave Botts bounced and that Botts told him if he did not give her $5000, he would have to take a plea bargain. Merritt testified that, at some point, the State offered a five-year plea bargain offer, which he turned down because he wanted a trial or a dismissal. According to Merritt, Botts told him she believed he was innocent and that he had a good case.

Merritt explained that, on the morning of trial, Botts told him that he needed to seriously consider taking the deal for five years, and he was surprised. Merritt

testified that he told Botts no, and Botts then commented that the judge was unfair and if he was convicted he would get twenty years. According to Merritt, Botts encouraged him to talk with his family about it and she left them alone. Merritt explained that he told Botts he wanted a trial and that his sister wanted Botts to see if the State would offer a deal of less than five years. Merritt testified after checking, Botts told him the offer was now ten years because the prosecutor had to work on the case all weekend. Merritt said he felt terrible, and Botts then recommended he take the ten-year offer; and, Botts told him that seeing the complainant crying made her think that he would lose at trial and a jury would convict him.

According to Merritt, Botts went to the judge's chamber, and when she returned, she spoke with Merritt and his family about stacked sentences:

> . . . She told me that she went to the prosecutor and asked him if he was going to stack -- have a motion to stack the sentence. And she said no -- he said no. And then she said that the judge said, however, that he was going to stack the sentences and that I would get 40 years.

Merritt explained that he was frustrated and told Botts "I didn't do this. . . . I'm so mad. I didn't do this. I want to fight." Merritt testified that he accepted the ten-year deal because he felt "bullied[]":

> I felt like -- like if I protested my innocence any further that I was going to get max sentence. Every time she left -- left and came back, it was 5, 10, 20, 40 years. And I kept saying, "I want a trial, I want a trial," and she wouldn't hear me.

. . . .

 . . . she convinced me the judge was against me and that no matter what I did I was going to be found guilty.

Merritt acknowledged that he signed the plea papers, but he testified that he did not feel his decision to plead guilty and waive his rights was a voluntary decision made of his own free will.

Merritt agreed that Botts had informed him of the possible range of punishment. However, Merritt claimed that she did not tell him he would be eligible for probation from a jury and she never explained the judge's option to cumulate sentences. Merritt agreed he had every opportunity to tell the judge he wanted a trial. Merritt also agreed that he told the trial court that no one was coercing him to plead guilty and that he was satisfied with Botts's representation.

The State offered into evidence a digital copy of a recorded conversation between Botts and Merritt in October of 2016 as well as a transcript of the conversation, which the court admitted. Merritt agreed that the transcript, which reflected that Botts was asking to be paid or to "be prepared to . . . take a plea bargain[,]" was accurate as to what Botts had said to him. Merritt agreed that he did not pay Botts her whole $20,000 fee, and of the $4000 he did pay, Botts gave him back $2000.

*4. Testimony of the Prosecutor*

An Assistant District Attorney for Liberty County ("the prosecutor") testified that he had worked on Merritt's case. According to the prosecutor, initially Merritt wanted the case to go to trial, and only one plea offer for five years was made, which Merritt rejected. He explained that he began to prepare for trial, and then another offer was made for ten years. The prosecutor testified that Merritt rejected the offer and Botts asked whether the State would still offer five years. After the prosecutor checked with the complainant's family, he then reported to Botts that five years was no longer an option. According to the prosecutor, on the day of trial, the complainant was "extremely nervous[]" and was crying.

The prosecutor testified that he and Botts went into the judge's chambers, where there was no court reporter, to see if the judge would accept the ten-year offer, and the judge said that he would. The prosecutor agreed that he told Botts that, if Merritt rejected the ten-year offer, he would ask the jury to assess twenty years if they found him guilty. The prosecutor explained that Botts inquired whether he would dismiss one of the counts or move to stack sentences and he replied that he would keep both counts of the indictment and that he would not ask a jury to stack the sentences.

According to the prosecutor, the judge did not volunteer that he had a habit of stacking sentences but rather Botts asked the court whether he would be inclined to stack, and the court responded that it had stacked in similar cases and there was a possibility of stacking in this case. The prosecutor explained that the judge told Botts in chambers that, on at least one prior occasion, he had ordered consecutive sentences in a multiple count child sex case. The prosecutor denied that the judge became involved in the plea bargain discussion and stated that the judge "never got in the plea bargain in any form or fashion." The prosecutor testified that he was not aware of any conversations the trial court had with Merritt prior to Merritt filing his plea papers, and he denied that the trial court did anything to coerce Botts into telling Merritt to accept a plea deal. The prosecutor also explained that he had not known the trial court judge to stack sentences unless the DA's office requested it, and to his knowledge the judge had stacked sentences only once. In the prosecutor's opinion, there was nothing about the plea process that would indicate Merritt's plea was involuntary, coerced, or forced.

Findings of Fact and Conclusions of Law

The court denied Merritt's motion for new trial and certified his right to appeal. Merritt then filed this appeal. Merritt requested findings of fact and conclusions of law, and the trial court then entered written findings of fact and

conclusions of law. The court's findings of fact included the following, in relevant part:

> [] The State, Defense Counsel, and the Hon. Mark Morefield met in the Court's chambers. The State and Defense Counsel wanted to determine if the Trial Court would accept a ten (10) year plea and the dismissal of Count I of the Indictment.
> During the meeting, Defense Counsel initiated a discussion about stacked sentences if the Defendant were convicted on Counts I and II. Later in testimony from the State, [the prosecutor] testified that he may have initiated the discussion of a stacked sentence.
> The Trial Court, Hon. Mark Morefield, did NOT initiate the discussion. The stacking of sentences is within the discretion of the Judge and is a valid area of consideration for a defense attorney with a client facing a multi-count indictment.

## Standard of Review

An appellate court reviews a trial court's denial of a motion for new trial under an abuse of discretion standard, viewing the evidence in the light most favorable to the trial court's ruling. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Holden*, 201 S.W.3d at 763. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.* (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)); *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

At a hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *See Cannon v. State*, 691 S.W.2d 664, 673 (Tex. Crim. App. 1985). A trial court may choose to believe or to disbelieve any part of a witness's testimony, even if that testimony is uncontroverted. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). If the trial court's findings of fact are supported by the record, an appellate court is not at liberty to disturb them, and on appellate review, we address only the question of whether the trial court improperly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (citing *Self v. State*, 709 S.W.2d 662 (Tex. Crim. App. 1986); *Johnson v. State*, 698 S.W.2d 154, 159 (Tex. Crim. App. 1985)).

## Voluntary Plea

In three issues, Merritt challenges whether his guilty plea was voluntary. A guilty plea must be freely, knowingly, and voluntarily entered. Tex. Code Crim. Proc. Ann. art. 26.13(b) (West Supp. 2017). When we review the voluntariness of a plea, we examine the record as a whole. *Martinez v. State*, 981 S.W.2d 195, 197

(Tex. Crim. App. 1998) (per curiam); *Doubout v. State*, 388 S.W.3d 863, 865 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

When the record shows that the trial court gave a proper admonishment, there is a prima facie showing of a knowing and voluntary plea of guilty. *See Martinez*, 981 S.W.2d at 197; *Ex parte Gibauitch*, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985); *Ex parte Arjona*, 402 S.W.3d 312, 318 (Tex. App.—Beaumont 2013, no pet.) ("The admonishment is a prima facie showing that the guilty plea was knowing and voluntary."); *Doubout*, 388 S.W.3d at 865. The burden then shifts to the defendant to show that he pleaded guilty without understanding the consequences of his plea and thereby suffered harm. *See Martinez*, 981 S.W.2d at 197; *see also* Tex. Code Crim. Proc. Ann. art. 26.13(c) (West Supp. 2017). Once a defendant has pleaded guilty and attested to the voluntary nature of his plea, he bears a heavy burden at a subsequent hearing to demonstrate a lack of voluntariness. *Ybarra v. State*, 93 S.W.3d 922, 925 (Tex. App.—Corpus Christi 2002, no pet.).

The fact that a defendant may have pleaded guilty as a result of plea bargaining in the hope of avoiding the possibility of a higher sentence does not invalidate a guilty plea. *See Galvan v. State*, 525 S.W.2d 24, 26 (Tex. Crim. App. 1975). We consider the totality of the circumstances surrounding the plea and in light of the entire record. *See Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App.

1999); *Martinez*, 981 S.W.2d at 197; *Ducker v. State*, 45 S.W.3d 791, 796 (Tex. App.—Dallas 2001, no pet.).

### Judicial Participation in Plea Negotiations

In his first issue, Merritt argues that his guilty plea was involuntary because the trial court informed Merritt's attorney that, if Merritt went to trial and was convicted on both counts, there was a high probability that he would cumulate the sentences. According to Merritt, such a comment constituted an improper participation in plea negotiations by the court and rendered his subsequent guilty plea involuntary.

A plea bargain is a contract between the State and the defendant. *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009); *Papillion v. State*, 908 S.W.2d 621, 624 (Tex. App.—Beaumont 1995, no pet.). The trial judge may follow or reject the agreement. *Id.*; *see also* Tex. Code Crim. Proc. Ann. art. 26.13(a)(2) (West Supp. 2017).

The Texas Court of Criminal Appeals has generally discouraged judicial involvement in plea negotiations. *See Ex parte Williams*, 704 S.W.2d 773, 777 n.6 (Tex. Crim. App. 1986) (citing *Ex parte Shuflin*, 528 S.W.2d 610, 617 n.1 (Tex. Crim. App. 1975)); *State ex rel. Bryan v. McDonald*, 662 S.W.2d 5, 8-9 (Tex. Crim. App. 1983).

> Although Texas trial judges are not expressly prohibited by statute or any rule of law from participating in a plea bargaining session, this Court has nevertheless stated that a trial judge should not participate in any plea bargain agreement discussions until an agreement has been reached between the prosecutor and the defendant. The reason for this suggestion is that the trial judge should always avoid the appearance of any judicial coercion or prejudgment of the defendant since such influence might affect the voluntariness of the defendant's plea.

*Perkins v. Court of Appeals for the Third Supreme Judicial Dist. of Tex.*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987) (internal citations omitted).

Appellant complains that the trial court's alleged comment about the possibility of stacked sentences persuaded him to change his decision to go to trial and thereby rendered his plea involuntary. The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternatives open to the criminal defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). Nothing in the record now before us indicates that the trial court "participated in the plea negotiations" simply by answering a question from Merritt's attorney about the possibility of stacking the sentences in a multiple count indictment. Furthermore, while a trial court is discouraged from participation in plea negotiations, a trial judge's alleged participation in plea negotiations does not necessarily render a defendant's plea involuntary. *See Ex parte Shuflin*, 528 S.W.2d at 615.

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.[,] bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970) (citing *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957); *see also Rios v. State*, 377 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (a plea is involuntary when induced by threats, misrepresentations, or improper promises by a prosecutor, judge, or law enforcement officials).

In this case, Botts testified that the trial judge told her "there was a high probability" that he would stack the sentences, as he has a habit of doing. Botts also testified that the judge had said nothing more than what he was able to do regarding stacking sentences and that she believed the judge's "high probability" remark was "a threat designed to persuade [Merritt] to take the plea bargain[.]" The prosecutor testified that the trial judge answered a question asked by Botts about possible stacking. The prosecutor also testified that the trial judge also told Botts that, on at least one prior occasion, he had ordered consecutive sentences in a multiple count child sex case. The prosecutor testified that the judge "never got in the plea bargain in any form or fashion." After the hearing on the motion for new trial, the court made

a finding of fact that the trial court judge did not initiate any discussion regarding stacked sentences.

We defer to the trial court's determination of historical facts that are based on an evaluation of credibility and demeanor. *Crain*, 315 S.W.3d at 48. Because the trial court's findings of fact are supported by the record, we limit further discussion to whether the trial court improperly applied the law to the facts. *Romero*, 800 S.W.2d at 543. The record before us provides no evidence of threats, misrepresentation, or improper promises by the trial court that would render Merritt's plea involuntary. *See Brady*, 397 U.S. at 755. Moreover, the record shows that the trial court gave a proper admonishment, which constitutes a prima facie showing that Merritt's guilty plea was knowing and voluntary. *See Martinez*, 981 S.W.2d at 197; *Ex parte Gibauitch*, 688 S.W.2d at 871; *Ex parte Arjona*, 402 S.W.3d at 318. The record reflects no evidence that Merritt pleaded guilty without understanding the consequences of his plea and thereby suffered harm. *See Martinez*, 981 S.W.2d at 197. Moreover, a trial court generally has broad discretion to determine whether multiple sentences will run consecutively or concurrently. *See Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). Accordingly, the trial court did not err in finding that Merritt failed to meet his burden to show that the

alleged comments by the trial court rendered his guilty plea involuntary. *See Martinez*, 981 S.W.2d at 197.[1] We overrule Merritt's first issue.

Coercion by Counsel

In his second issue, Merritt argues that his guilty plea was involuntary because his attorney manipulated and coerced him to accept the plea bargain. The trial court's findings of fact reflect that the court properly admonished Merritt concerning the consequences of entering a guilty plea and that Merritt's responses reflected that he understood his rights and that he had not been threatened, forced, or coerced him into pleading guilty. Because the record reflects that Merritt was properly admonished, he had the burden to prove that he did not understand the consequences of his plea. *See id.*

Merritt's own testimony at the hearing on the motion for new trial reflects that he understood the consequences of pleading guilty. Merritt also acknowledged in his testimony that, if a jury convicted him, he understood that punishment would be

---

[1] Because the trial court did not find that the trial court had participated in plea negotiations, on this record, we find it unnecessary to address Appellant's suggestion that "Texas should join the federal courts and other states in holding that judicial participation in plea negotiations renders a guilty plea involuntary." *See* Tex. R. App. P. 47.1. Under federal rules, a trial court "must not participate" in plea agreement discussions. *See* Fed. R. Crim. P. 11(c)(1); *see also United States v. Pena*, 720 F.3d 561, 573 (5th Cir. 2013) (characterizing Rule 11 as a "bright-line prohibition of all judicial participation in plea negotiations").

within the range of two to twenty years on each count. In addition, Merritt agreed that his plea counsel gave him her "opinion" that a jury would probably convict him and could assess twenty years confinement on each count.

On this record, we conclude that Merritt has not met his heavy burden to show that he did not understand the consequences of entering his guilty plea. *See id.* The trial court's ruling does not lie outside the zone of reasonable disagreement, and the trial court did not abuse its discretion in denying Merritt's motion for new trial. We overrule Merritt's second issue.

## Eligibility for Probation

In his third issue, Merritt argues that his guilty plea was involuntary because his plea counsel failed to advise him that he would have been eligible for probation from a jury. Merritt failed to make this argument in his Motion for New Trial, and he fails to specify where he made this argument in the trial court. Therefore, he failed to preserve error on this point for our review. *See* Tex. R. App. P. 33.1 (To preserve error for appellate review the complaining party must show that it presented its complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request.); *Burbage v. Burbage*, 447 S.W.3d 249, 257 (Tex. 2014); *Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002) ("[A] trial court's decision will not be reversed on a theory the trial court did not have an opportunity

to rule upon and upon which the non-appealing party did not have an opportunity to develop a complete factual record.").[2] We overrule Merritt's third issue.

Because we have found no error, we need not determine whether any prejudice resulted. *See* Tex. R. App. P. 47.1. Having overruled all Merritt's issues, we affirm the judgment of conviction.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 31, 2018
Opinion Delivered March 14, 2018
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

---

[2] We note that the record is undeveloped as to the age of the complaining witness at the time the offense occurred. A defendant convicted by a jury of indecency with a child is not eligible for community supervision "if the victim of the offense was younger than 14 years of age at the time the offense was committed[.]" *See* Tex. Code Crim. Proc. Ann. art. 42A.056(4) (West Supp. 2017) (previously codified at Tex. Code Crim. Proc. Ann. art. 42.12).