George BROWN, Jr., Appellant,

v.

C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.

No. 13810.

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1970.

Decided Dec. 29, 1970.

H. Lane Kneedler, Charlottesville, Va. (Court-assigned) for appellant.

Edward J. White, Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen., on brief) for appellee.

Before BRYAN and WINTER, Circuit Judges, and WIDENER, District Judge.

WIDENER, District Judge:

This case raises the issue of whether a trial judge's participation in plea bargaining negotiations vitiates the voluntariness of a subsequent guilty plea. The district court held that a state prisoner's plea of guilty was voluntary notwithstanding the fact that the record made it clear that the trial judge had entered into the plea bargaining negotiations. We affirm the decision of the district court.

On April 29, 1957, Emma Marion Harper, and her husband, Charles Hamilton Harper, were robbed in Essex County, Virginia. The robber was armed with a revolver. Mr. Harper was severely beaten with a hammer by the robber and was near death for a period of time. He later recovered.

On May 2, 1957, George Brown, Jr., the petitioner herein, was arrested in Alexandria, Virginia. Brown testified that he had a second or third grade education and an IQ of 58. However, at the state habeas corpus hearing in 1967, Brown demonstrated that he was mentally alert when he spontaneously objected to the relevancy of certain questions asked on cross-examination.

After his arrest, Brown was interrogated but did not incriminate himself. He alleged that he was forced to stand in a two man line-up with one Oscar Willis for identification by Mrs. Harper. In his brief before this court, it is claimed that Mrs. Harper knew Willis at the time of the line-up and identified Brown as the robber. During the interrogation and the line-up, Brown was without counsel.

On May 16, 1957, Brown was indicted upon two counts of robbery, the first count charging the robbery of Mrs. Harper; the second count charging the robbery of Mr. Harper by "severely striking, beating and severely wounding the said Harper" with a hammer. The Virginia law applicable to robbery allows imposition of the death penalty for conviction under either of the two counts. In Virginia, the jury fixes punishment if the case is tried by jury. Va.Code Ann., § 19.1–291 (1960). The judge fixes punishment if the defendant is tried without a jury. Va.Code Ann., § 19.1–192 (1960).

On the day the indictment was returned against Brown, the court appointed an experienced lawyer to represent Brown. Brown initially indicated to his attorney that there was another person involved in the robbery and that he, Brown, was not guilty. The appointed attorney testified at the state habeas corpus hearing that, later, Brown's contention that another party was involved "sort of evaporated."

After his investigation of the case, counsel advised Brown that he should plead guilty rather than risk a jury trial in which the jury could have sentenced him to death.

Prior to the trial, Brown's lawyer entered into plea negotiations with the prosecutor. Later, after both the prosecutor and defense counsel had talked with the trial judge, the judge told Brown's counsel that if he pleaded guilty, the court would impose a life sentence. When this proposal was offered to Brown, he decided to plead guilty to the first count of the indictment charging him with the robbery of Mrs. Harper. The plea was accepted and petitioner was sentenced to life imprisonment. The second count of the indictment which charged Brown with attacking and robbing Mr. Harper was nolle prossed on the same date upon the motion of the prosecutor.

Petitioner's main contention in the appeal now before this court is that his guilty plea was involuntary because it was coerced by the trial judge. The petitioner asks this court to hold as a matter of law that a guilty plea is involuntary where the trial judge participated in the plea negotiation process prior to the time the defendant decided to plead guilty.

In his order, the trial judge found "that the accused fully understood the nature and effect of his plea."

At the state habeas corpus hearing, held more than ten years after the petitioner's trial, Brown's attorney could not recall if the trial judge had specifically questioned Brown concerning his guilty plea. However, he testified that it was the trial judge's usual practice to question defendants about pleas of guilty. The prosecutor, after reviewing his file of the case, testified that the trial judge "advised him (Brown) that he had a right to plead not guilty, and in case he pled not guilty, he would be entitled to a jury trial." He further testified that the trial judge advised Brown "that if he entered a plea of guilty, it would be his decision after advising with his lawyer * * *." Brown contends that the trial judge did not tell him "anything at all" about his plea or his right to a jury trial.

This court has considered the voluntariness of Brown's guilty plea once before when it affirmed the decision of the United States District Court for the Eastern District of Virginia, at Norfolk, dismissing Brown's petition without a hearing on March 3, 1959. We affirmed the lower court because Brown had failed to substantiate his "general allegations" that his plea had been coerced by his court-appointed attorney. Brown v. Smyth, 271 F.2d 227 (4th Cir. 1959).

■ Although this same ground of involuntariness of guilty plea was raised in the 1959 petition before the district court, this court is not precluded from considering this claim. In Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1962), the United States Supreme Court set out guidelines to control successive petitions for habeas corpus. In that case, the Supreme Court held that "[C]ontrolling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." Sanders, p. 15, 83 S.Ct. p. 1077. Referring to the case before it then, the Supreme Court stated [P]etitioner's first motion under § 2255 was denied because it stated only bald legal conclusions with no supporting factual allegations. * * * the denial, thus based, was not on the merits. It was merely a ruling that petitioner's pleading was deficient." Sanders, p. 18, 83 S.Ct. p. 1079. Brown's first petition was denied without a hearing on similar grounds, specifically, that Brown had failed to substantiate his "general allegations." Thus, in accord with the guidelines of Sanders, the prior determination as to the voluntariness of Brown's guilty plea was not based upon

the merits and does not preclude the present petition upon the same ground.

The district court below made sufficient findings of exhaustion of state remedies, and we need only note that although petitioner did not specifically raise the issue of the participation of the trial judge in plea bargaining negotiations in his habeas corpus hearing before the Circuit Court of Essex County, the record of that hearing reveals that the issue was before that court. Thus, for the purposes of exhaustion of state remedies, this issue was before the Virginia Supreme Court of Appeals when it refused to issue a writ of error in Brown's case. See United States v. Pate, 240 F.Supp. 696, 704 (N.D.Ill.1965). Brown had properly exhausted his state remedies upon this point when he petitioned the district court for a writ of habeas corpus. See Grundler v. North Carolina, 283 F.2d 798, 800 (4th Cir. 1960).

Shortly before this court heard the present case, the United States Supreme Court decided the case of Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In *Brady*, the petitioner alleged that his guilty plea was coerced by virtue of a criminal statute which provided a maximum penalty of death if the accused pleaded not guilty and was tried by a jury but provided for a maximum penalty of life imprisonment if the accused pleaded guilty and was sentenced by the judge. Even though *Brady* did not involve a plea bargaining situation, the Supreme Court stated in its opinion:

> "Insofar as the voluntariness of his plea is concerned, there is little to differentiate *Brady* from * * * (3) the defendant who is permitted by prosecutor and judge to plead guilty to a lessor offense included in the offense charged; and (4) the defendant who pleads guilty to certain counts with the understanding that other charges will be dropped." *Brady*, p. 751, 90 S.Ct. p. 1470.

These two situations which the Supreme Court considered analogous to Brady's situation must necessarily be characterized as plea bargaining.

In *Brady*, the Supreme Court went on to set out the standard by which the voluntariness of guilty pleas should be measured:

> "A plea of guilty entered by one fully aware of the direct consequences, *including the actual value of any commitments made to him by the court*, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes)." [Citing Shelton v. United States, 246 F.2d 571, 572 n. 2 (5th Cir. 1957)]. [Emphasis our own.]

"The actual value of any commitments made to him by the court" can only contemplate plea bargaining in which the judge has participated. Speaking specifically to a plea bargaining situation, the Supreme Court said that in order to reach a contrary decision in *Brady*:

> "it would be necessary to forbid prosecutors and judges to accept guilty pleas to selected counts, to lesser included offenses, or to reduced charges. The Fifth Amendment does not reach so far." *Brady*, p. 753, 90 S.Ct. p. 1471.

In Lassiter v. Turner, 423 F.2d 897, 900 (4th Cir. 1970), this court stated:

> " * * * plea bargaining is well established in the administration of criminal justice. Properly conducted and fairly negotiated, plea bargaining serves a useful purpose for society, the prisoner and the quality of justice in those cases which must be tried. In addition to other safeguards which limit the character of the negotiations and the subsequent agreement, an overriding constitutional limitation is that the plea must not have been induced by promises or threats which deprive it of the character of a voluntary act."

■ The Supreme Court's decision in *Brady* provides the standard by which reviewing courts may now measure any promises which might have induced the defendant's guilty plea. Simply because the promise made by the judge induced the defendant to plead guilty does not make that plea involuntary, rather, the promise must be of the prohibited type to affect the voluntariness of the defendant's plea.

■ The petitioner would have us prescribe a specific standard of conduct to be followed by trial judges in plea negotiations. He suggests that it is proper for a judge to indicate his ratification of a bargain already reached by the defendant, defense counsel, and the prosecutor, but improper for a judge to become involved in the negotiation process itself *"prior to the time the defendant has decided to plead guilty*, i. e., prior to the time the defendant has indicated to the prosecutor that he is willing to accept the bargain proposed."* [Appellant's emphasis].

By appellant's standard, a judge who refuses to ratify the first of several plea bargains, has not become involved in the plea bargaining process. However, continued bargaining, with repeated submission of agreements to the judge for his ratification, would involve the judge in the formulation of the final agreement. Such a procedure would only be an indirect manner of judicial participation in the plea bargaining process. It would be an exercise in judicial circuitousness that is not necessary to insure the voluntariness of guilty pleas.

In referring to a conversation between a trial judge and a defendant regarding a guilty plea, Judge Friendly said:

" * * * no one contends that such a conversation by a judge is a *per se* denial of due process; decision turns on what was said and its probable effect. A reviewing court must not impose on a hard-pressed nisi prius judge, speaking extemporaneously to a criminal defendant, a standard of precise and balanced expression not always realized even in opinions which appellate judges have had ample opportunity to revise." United States v. LaVallee, 319 F.2d 308, 315 (2d Cir. 1963) concurring and dissenting opinion.

If we were to impose the standard sought by the petitioner, a trial judge could not be certain that his comments would not be considered by the defendant or by a reviewing court as bringing the judge into the plea bargaining process. For this reason, such a standard as proposed by the petitioner might effectively put an end to plea bargaining.

Over three-fourths of all criminal convictions in the United States are upon pleas of guilty. *Brady*, 397 U.S. at page 752, 90 S.Ct. 1463 [Citing D. Newman, Conviction, The Determination of Guilt or Innocence Without Trial, 3 and n. 1 (1966)]. To keep the judge out of plea discussions would:

" * * * deny the defendant important and relevant information which might be helpful in choosing a plea. Such a rule enforces the defendant's * * * right to plead in the dark." Comment, 32 U.Chi.L.Rev. 167, 183 (1964).

An end or serious curtailment of plea bargaining could only have the effect of depriving a criminal defendant of what little bargaining power he may have. In many, or even most, cases, the only defense available is the determination and nerve of the defense attorney. To deprive the attorney of the opportunity to talk to the judge about a guilty plea before a defendant has made up his mind to plead guilty, would deprive him of one of the most valuable tools of his defense.

This court is of opinion that at the time he entered his plea of guilty, petitioner was fully aware of the consequences, including the "value of any commitments made to him by the court." His guilty plea was not induced by "threats," "misrepresentation" or by "promises having no proper relationship to the prosecutor's business." *Brady*, 397 U.S. p. 755, 90 S.Ct. p. 1472.

We are further of opinion that the conversation had by the trial judge with the defense attorney did not in fact render the petitioner's plea involuntary. The conduct of the trial judge was not only not prohibited by *Brady* but was of a type in fact contemplated by the opinion.

Our opinion is reinforced by the following statement from United States ex rel Rosa v. Follette, 395 F.2d 721, 725 (2d Cir. 1968):

> "The issue ultimately to be resolved is not so much who participated in the plea discussions but whether the defendant's decision to plead guilty was coerced or otherwise invalid."

What we have written is not intended to disparage the American Bar Association's Standards concerning the trial judge's participation in plea discussions. On the contrary, we recognize that the Standards prescribe a proper rule of practice, although we do not mean that a criminal defendant cannot receive a fair trial under any other circumstances. They do not, however, state a constitutional limitation, and for this reason we do not hold that the judge's participation in the plea discussion in itself rendered the plea involuntary. It is, of course, a factor which must be considered, as *Brady* and the commentary to the Standards point out.[1]

We find no merit in petitioner's contention that he was denied due process, especially in light of our finding that petitioner's plea of guilty was made volun-

tarily. Thus, the writ should not issue and we therefore affirm the decision of the district court.

Affirmed.

WINTER, Circuit Judge (dissenting):

In this capital case, the state trial judge, in an *ex parte* discussion with defense counsel, spontaneously volunteered that if petitioner pleaded guilty he would receive only a life sentence. It is clear that, at the time of the judge's vital disclosure, no plea bargaining agreement had been reached between the prosecutor and defense counsel. It is equally clear that this information caused petitioner, who had theretofore steadfastly protested his innocence despite his court-appointed counsel's recommendation that he admit guilt, to tender his plea. Petitioner testified that this was his impetus. His court-appointed counsel understood that this was petitioner's motivation. Petitioner's rejection of his attorney's advice up to the point of knowing the judge's views, the rapidity with which he receded from his prior assertion of his rights and his claim of innocence, and the absence of any other explanation for his change of position are additional corroboration.

The majority, nevertheless, holds that petitioner's plea of guilty was voluntary —the free and untrammeled choice of his low mentality, uninfluenced and unmotivated by extraneous threat or promise. The majority reads Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), to sanction judicial

---

1. ABA, Standards Relating to Pleas of Guilty, § 3.3 (Approv. Draft, 1968) provide:

   3.3 Responsibilities of the trial judge.

   (a) The trial judge should not participate in plea discussions.

   (b) If a tentative plea agreement has been reached which contemplates entry of a plea of guilty or nolo contendere in the expectation that other charges before that court will be dismissed or that sentence concessions will be granted, upon request of the parties the trial judge may permit the disclosure to him of the tentative agreement and the reasons therefor in advance of the time for tender of the plea. He may then indicate to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition if the information in the presentence report is consistent with the representations made to him. If the trial judge concurs, but later decides that the final disposition should not include the charge or sentence concessions contemplated by the plea agreement, he shall so advise the defendant and then call upon the defendant to either affirm or withdraw his plea of guilty or nolo contendere.

   [Subsection (c) is not reproduced here]

participation in plea bargaining before the accused has decided to plead guilty by permitting the judge to indicate a defendant's ultimate fate so as to assist him in his decision. As a result of this reading, the majority neatly avoids the carefully considered contrary views of eminent jurists, prosecutors, defense counsel, and teachers of the law as expressed in the A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968) § 3.3, while paying lip service to their desirability. I disagree.

– I –

However useful and socially desirable plea bargaining may be, "an overriding constitutional limitation is that the plea must not have been induced by promises or threats which deprive it of the character of a voluntary act." Lassiter v. Turner, 423 F.2d 897, 900 (4 Cir. 1970). To a person in petitioner's position, the statement of the trial judge may well have had either or both of two meanings: first, in the affirmative sense, it was a commitment that a certain desirable result would obtain if the guilty plea was forthcoming, and, second, in the negative sense, it was an implication that, if tried and found guilty, the likelihood of the imposition of capital punishment would be increased. Because the statements emanated from the very person that petitioner contemplated would preside at his trial, the legal principle, known to judges and lawyers and perhaps known to petitioner, that in Virginia the jury would sentence him if it returned a guilty verdict is of little significance. Petitioner could well suppose that if he refused the judge's suggestion, the jury's determination of sentence would not proceed without hostile judicial influence.

I cannot conclude that, in this case, petitioner's plea was voluntary. Factually, it was involuntary. The record will only support the conclusion that petitioner tendered his plea because it was generated by the trial judge. It is, therefore, not necessary here to decide that due process always forbids judicial intervention in plea bargaining before tentative agreement between prosecutor and accused, but I find persuasive the views of Judge Weinfeld expressed in United States v. Gilligan, 256 F.Supp. 244, 254 (S.D.N.Y.1966):

The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice. Intentionally or otherwise, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence. *A guilty plea predicated upon a judge's promise of a definite sentence by its very nature does not qualify as a free and voluntary act.* The plea is so interlaced with the promise that the one cannot be separated from the other; remove the promise and the basis for the plea falls. (footnotes eliminated, emphasis supplied.)

See also, Judge Weinfeld's earlier expression in United States v. Tateo, 214 F. Supp. 560 (S.D.N.Y.1963). The better reasoned cases and judicial expressions are in full accord: Scott v. United States, 136 U.S.App.D.C. 377, 419 F.2d 264 (1969) (dicta); Brown v. Beto, 377 F.2d 950 (5 Cir. 1967) (dictum); United States v. LaVallee, 319 F.2d 308 (2 Cir. 1963) (Marshall, J., dissenting); Euziere v. United States, 249 F.2d 293, (10 Cir. 1957). See also United States v. Schmidt, 376 F.2d 751 (4 Cir. 1967);

United States v. Lias, 173 F.2d 685 (4 Cir. 1949).

The result I would reach in the instant case has the imprimatur of the A.B.A. Standards for Criminal Justice, *supra.* Section 3.3(a) of the Standards Relating to Pleas of Guilty flatly states that "[t]he trial judge should not participate in the plea discussions". Other provisions sanction judicial consideration and approval of the agreement *once a tentative bargain has been made.* The standard and the reasons for its recommendation are set forth in the commentary:

> The standard takes the position that judicial participation in plea discussions is undesirable. Compare Informal Opinion No. 779, ABA Professional Ethics Committee: "A judge should not be a party to advance arrangements for the determination of sentence, whether as a result of a guilty plea *or a finding of guilty based on proof."* 51 A.B.A.J. 444 (1965).
>
> There are a number of valid reasons for keeping the trial judge out of the plea discussions, including the following: (1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent. Comment, 32 U.Chi.L.Rev. 167, 180–83 (1964); Note, 112 U.Pa.L.Rev. 865, 891–92 (1964); Note, 55 Colum.L.Rev. 366, 371 (1955) * * *

The commentary also considers the argument, oft advanced and accepted by the majority, that judicial nonparticipation has the effect of requiring a defendant "to plead in the dark." See Comment, 32 U.Chi.L.Rev. 167, 183 (1964). The short answer provided is that "the benefits which would be derived from this practice [involving the trial judge in plea discussion before tentative or conditional agreement] do not outweigh the risks which are inherent in judicial participation in plea discussions and plea agreements."

The majority advances other reasons to reject a rule of judicial nonparticipation and they deserve brief consideration. To me, they are unpersuasive.

First, it is said that if a trial judge refuses ratification of a plea bargain made without his intervention, he necessarily becomes involved in the negotiation of subsequent revised plea bargains. Because this "indirect manner of judicial participation in the plea bargaining process" would be "an exercise in judicial circuitousness" the majority concludes that his direct initial participation is somehow justified. There are two answers to this thesis: First, the number of judicially rejected plea bargains is quite small, so that the problem rarely arises; and, second, if a plea bargain is rejected, it should be a simple matter for the judge to disqualify himself and send the parties to another judge for consideration of their revised agreement.

Second, it is said that, if judicial participation in plea negotiations is outlawed, a trial judge cannot be certain that a comment of his would not be considered to implicate him improperly, all to the end that the socially desirable process of plea bargaining may be effectively ended. I suggest that the judge can be certain that he has committed no impropriety if his comments and discussion about the ultimate disposition of a case are confined to occasions when both parties were present, in person or by counsel, and to the time *after* the parties have reached tentative agreement. I can hardly suppose that discussion and exploration of possible areas of agreement between prosecutor and defense counsel will dry up in the absence of judicial stimulation.

Thus, I would decide that, unless Brady v. United States, *supra*, requires a different result, petitioner's plea of guilty was not voluntary.

## – II –

The majority concludes that the conduct of the trial judge "was not only not prohibited by *Brady* but was of a type in fact contemplated by the opinion." *Brady* is pertinent here because it reaffirms the due process requirement that a plea of guilty be a free and voluntary act before an accused may be held to its consequences, but I do not read *Brady* as a license for what transpired here.

*Brady* turned on whether a guilty plea, under an indictment subjecting the accused to capital punishment for kidnapping if the jury so recommended, was voluntary. The death penalty provision of the statute had been held unconstitutional in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). The petitioner asserted that he pleaded guilty because of his fear of possible imposition of the unconstitutional death penalty, and for that reason his plea was not voluntary. His argument was rejected, and his plea held voluntary. In reaching this conclusion, the Court noted, as a factual matter, that Brady, advised by competent counsel, tendered his plea after his codefendant determined to plead guilty and because available to testify against him. The threat of the death penalty was thus only one factor entering into Brady's determination to plead, and the Court declined to hold "that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." 397 U.S. at 751, 90 S.Ct. at 1470. In conjunction with that principle, the Court construed its decision in *Jackson*, prohibiting the imposition of the death penalty, as one which "neither fashioned a new standard for judging the validity of

guilty pleas nor mandated a new application of the [voluntariness] test * *." 397 U.S. at 747, 90 S.Ct. at 1468.

In its opinion, the Court employed the language—a quotation from Shelton v. United States, 246 F.2d 571, 572, n. 2 (5 Cir. 1957), reversed on confession of error, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed. 2d 579 (1958)—on which the majority relies. Superficially, the language may be read to contemplate plea bargaining in which the judge has participated. But analysis of the antecedents of the statement, and consideration of other portions of the Court's opinion, satisfy me that the majority's reading is incorrect.

*Shelton* as an examination of the panel opinion in 242 F.2d 101 (5 Cir. 1957), which was rejected by the en banc court, will demonstrate, was not a plea bargaining case in which there was any claim that there had been judicial participation in the negotiations preceding the accused's decision to plead guilty. The inducement for defendant to plead was a representation by the prosecutor as to the sentence defendant would receive, and the representation was fulfilled. The statement of the en banc court was, therefore, dictum taken from Judge Tuttle's dissent from the panel's decision, where he analyzed previous decisions in which, *inter alia*, a defendant was misled into pleading guilty by a promise of leniency from the court. Judge Tuttle relied on two authorities: United States v. Lias, 173 F.2d 685 (4 Cir. 1949), and United States v. Parrino, 212 F.2d 919 (2 Cir. 1954) (dictum).

In United States v. Lias, which was an attempted appeal by the United States from the granting of a motion to strike out guilty plea, we indicated that it was proper for the district judge to strike out the plea of an income tax offender, sentenced to five years on his guilty plea, who swore that he had been led to believe, as a result of what was said by the judge to his attorney, that he would receive probation if he would plead guilty. In this case the judge did not controvert the allegations that he used the language attributed to him. The case is thus clear-

ly one of a judicial promise not kept and our approval of the district judge's action in striking out the plea was no more extensive.

In United States v. Parrino, there was only dictum that misadvice by the court with regard to the collateral consequences of a plea of guilty, such as possible deportation or eligibility to enlist in the armed services, was not a ground to strike out the plea when the collateral consequences proved more onerous than the trial judge contemplated. The precise point decided was that innocent misadvice by *counsel* that a plea of guilty would not result in the accused's being deported was not a ground to strike out his plea.

Thus, the quotation in *Brady*, itself not a case in which there was any claim of judicial participation in any bargain to plead guilty, is not founded upon authority to support what the majority reads the language to say. If this were not enough, the majority in *Brady* carefully reserved the very question which the majority decides, so that it can hardly be said that *Brady* intended to decide it. In speaking of the voluntariness of Brady's plea, the Court likened *Brady* to

> (1) the defendant, in a jurisdiction where the judge and jury have the same range of sentencing power, who pleads guilty because his lawyer advises him that the judge will very probably be more lenient than the jury; (2) the defendant, in a jurisdiction where the judge alone has sentencing power, who is advised by counsel that the judge is normally more lenient with defendants who plead guilty than with those who go to trial; (3) the defendant who is permitted by prosecutor and judge to plead guilty to a lesser offense included in the offense charged; and (4) the defendant who pleads guilty to certain counts with the understanding that other charges will be dropped.

379 U.S. at 751, 90 S.Ct. at 1470. Significantly thereafter, it added a footnote to the statement "[i]n each of these situations," reading as follows:

We here make no reference to the situation where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty. In Brady's case there is no claim that the prosecutor threatened prosecution on a charge not justified by the evidence or that the trial judge threatened Brady with a harsher sentence if convicted after trial in order to induce him to plead guilty.

397 U.S. at 751, n. 8, 90 S.Ct. at 1470.

As I have attempted to demonstrate in Part I, the effect of the judge's statement in the case at bar was not only to promise petitioner leniency if he pleaded guilty, but to threaten him if he persisted in his plea of not guilty. This is the point that *Brady* does *not* decide and which, for the reasons I have stated, lead me to conclude that the judgment should be reversed with directions to issue the writ unless the state affords petitioner a new trial upon a plea of not guilty within a reasonable period.