# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                          )
        Plaintiff,     )
                          )
     v.                 )     ID Nos. 1705004684 and 1705004742
                          )
                          )
                          )
KORI THOMAS,        )
                          )
        Defendant.   )

Submitted: October 22, 2022
Decided: February 28, 2023

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S AMENDED MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

Timothy Maguire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorneys for the State.

Natalie Woloshin, Esquire, Woloshin, Lynch & Associates, P.A., Wilmington, Delaware, counsel for Defendant.

Kori Thomas, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se.*

SALOMONE, Commissioner

This 28th day of February 2023, upon consideration of Defendant Kori Thomas' ("Defendant" or "Thomas") Amended Motions for Postconviction Relief, it appears to the Court that:

## BACKGROUND AND PROCEDURAL HISTORY

1. In April and May of 2017, there were a series of gun-point robberies at several convenience stores, gas stations, and liquor stores in New Castle County, Delaware.

2. On May 8, 2017, Thomas was arrested in connection with those crimes and charged with the following: (i) thirteen (13) counts of Robbery in the First Degree; (ii) fourteen (14) counts of Possession of a Firearm during the Commission of a Felony (PFDCF); (iii) one (1) count of Attempted Murder in the First Degree; (iv) thirteen (13) Counts of Possession of a Firearm by a Person Prohibited (PFBPP); and (v) thirteen (13) Counts of Wearing a Disguise during the Commission of a Felony.

3. Following plea negotiations between the parties, Thomas plead guilty to three charges: (i) one (1) count of Robbery in the First Degree (Habitual), (ii) one (1) count of Robbery in the First Degree (Non-Habitual), and (iii) one (1) count of Attempted Assault in the Second Degree.

4. Thereafter, the State filed a motion to declare Defendant a habitual offender pursuant to 11 *Del. C.* §4214(c) as to the charge of Robbery in the First Degree.[1] On November 1, 2018, the Court granted the State's application and sentenced Defendant to 25 years of Level V incarceration, with credit for 541 days previously served as to Robbery First Degree (Habitual). As to the Robbery First Degree, non-habitual offender charge, Defendant was sentenced to 25 years at Level V, suspended after 3 years, for 6 months at Level III. Finally, as to Assault Second Degree, Defendant was sentenced to 8 years at Level V, suspended for 6 months at Level III.[2]

5. On December 26, 2018, Defendant filed a *pro se* Motion for Modification of Sentence, which was denied by this Court on March 22, 2019.[3]

6. Defendant did not file a direct appeal of his conviction or sentence.

## RULE 61 MOTION

7. On July 23, 2019, Defendant filed a *pro se* Motion for Postconviction Relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61"), seeking to withdraw his guilty plea and raising claims of ineffective assistance of counsel.[4]

---

[1] In Criminal ID No. 1705004684: Superior Court Criminal Docket Index No. 48 (hereinafter "D.I. ___").

[2] D.I. 50-52.

[3] D.I. 52, 54, 58.

[4] D.I. 59.

2

8.    On August 5, 2019, Defendant filed a Motion for Appointment of Counsel in connection with his postconviction relief, which was denied by the Court on November 21, 2019.[5] That same day, the Court directed Defendant's prior defense counsel, Natalie Woloshin, Esquire, to submit an Affidavit responding to Defendant's ineffective assistance of counsel claims.[6]

9.    On January 21, 2020, defense counsel filed an Affidavit in Response to Defendant's claims of ineffective assistance of counsel denying those claims.[7]

10.    On February 24, 2020, the State filed its Response to Defendant's Motion for Postconviction Relief.[8]

11.    On May 4, 2020, Defendant filed five separate Motions which collectively sought to amend Defendant's initial Rule 61 Motion (collectively, the "Amended Motion").[9] With the Amended Motion, Thomas filed a second motion for appointment of counsel for purposes of his postconviction relief.

---

[5] D.I. 60-61

[6] *Id.*

[7] D.I. 63.

[8] D.I. 64.

[9] D.I. 65-69. Through the Amended Motion, Thomas requested that the five motions be accepted as the "operative Rule 61 and related motions." D.I. 65. As such, to the extent that additional or different claims were made in the Rule 61 filed on July 23, 2019 which were not included in the Amended Motion, the Court does not address those claims.

The Amended Motion also sought to have the record expanded to include the following: (i) a transcript of the April 27, 2018 hearing at which time Thomas entered his guilty plea and (ii) an Order requiring defense counsel to respond to specific questions raised by the Defendant.[10] On November 30, 2020, the Court granted the Amended Motion to Expand the Record, in part, and ordered that a transcript of the April 27, 2018 proceedings be made part of the record.[11] While Thomas only requested the plea colloquy transcript from the April 27, 2018 hearing be made part of the record, Defendant's plea colloquy was, in fact, conducted over the course of two days. As such, the Court *sua sponte* expanded the record to also include the transcript from the April 30, 2018 hearing. The plea colloquy transcript from the April 30, 2018 hearing was filed and docketed on December 14, 2020.[12] The plea colloquy transcript from the April 27, 2018 hearing was filed and docketed on March 12, 2021.[13]

12. On August 26, 2021, after receiving copies of the two plea transcripts, Defendant filed a Memorandum of Law in support of his Amended Motion and

---

[10] D.I. 68-69. The Court did not order counsel to respond to the specific questions raised by the Defendant in his Amended Motion as she had previously filed an Affidavit in Response to Defendant's claims of ineffective assistance of counsel on January 21, 2020 in which she denied those claims.

[11] D.I. 72.

[12] D.I. 73.

[13] D.I. 74.

renewed his request for appointment of counsel.[14]  His claims as set forth in the Amended Motion and Memorandum of Law can be fairly summarized as follows:

(1)   **Ground One:   Judicial Coercion**.   Defendant asserts that the statements made by the Court to him during the plea colloquy regarding the maximum penalties he faced if he were to proceed to trial and be convicted constituted a threat and/or scare tactic designed to coerce him into accepting the plea offer from the State and relinquishing his Constitutional right to proceed to trial. Thomas also contends that the decision by the Court to continue the plea hearing to allow Thomas more time to speak with his counsel was a further act of coercion.[15]

(2)   **Ground Two:  Judicial Abuse of Discretion.**  Along the same vein, Defendant contends that the alleged admonishments and/or threats made by the Court were outside of the Court's role as a neutral arbiter and constituted judicial abuse of discretion.[16]

(3)   **Ground Three: Ineffective Assistance of Counsel.**  Thomas contends (i) defense counsel was ineffective for failing to object during the plea colloquy to the alleged judicial coercion and abuse of discretion and (ii) defense counsel

---

[14] D.I. 67.

[15] D.I. 65-66.

[16] *Id.* Defendant alleges that the judge admonished him during the plea colloquy, refused to accept his rejection of the plea on three separate instances and employed fear tactics to coerce him into accepting the plea.

5

completed the coercion by requesting additional time to discuss the plea and related matters with the Defendant. According to the Defendant, when taken together, the Court and defense counsel coerced him into taking a plea in violation of his Sixth Amendment right to trial.[17]

Due to the foregoing actions, Defendant asserts that his plea was not entered voluntarily, knowingly and intelligently. That is, but for the alleged deficiencies and coercion, Defendant would have withdrawn his plea and proceeded to trial.[18]

13. Defendant's renewed Motion for Appointment of Counsel was denied on October 25, 2022.[19]

## LEGAL ANALYSIS OF CLAIMS

14. Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the Rule 61 Motion.[20] Pursuant to Super. Ct. Crim. R. 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[21]

---

[17] *Id.*

[18] *Id.*

[19] D.I. 82.

[20] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[21] *See* Super. Ct. Crim. R. 61(i)(5) and (d)(2)(i), (ii).

6

However, ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[22]

15. This is Defendant's first motion for post-conviction relief and it was timely filed.[23] No procedural bars prevent the Court from reviewing his ineffective assistance of counsel claims on the merits but procedural bars do exist with respect to his claims of judicial coercion and abuse of discretion.

16. In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard set forth in *Strickland v. Washington.*[24] This test requires the defendant to show: (a) counsel's deficient performance, *i.e.*, that his attorney's performance fell below "an objective standard of reasonableness,"[25] and (b) prejudice.[26]

17. Under the first prong, judicial scrutiny is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that

---

[22] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[23] *See* Super. Ct. Crim. R. 61(i)(1) (motion must be filed within one year of when conviction becomes final); Super. Ct. Crim. R. 61(m)(2) (If the defendant files a direct appeal, the judgment of conviction becomes final when the mandate is issued).

[24] *Strickland v. Washington,* 466 U.S. 668 (1984).

[25] *Id.* at 688.

[26] *Id.* at 694.

counsel's conduct was reasonable.[27] The *Strickland* Court explained that a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.[28]

18.     Under the second prong, in order to establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome."[29] In other words, not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.[30] The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[31] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[32]

---

[27] *Id.* at 689.

[28] *Id.* at 690.

[29] *Id.* at 694.

[30] *Id.* at 693.

[31] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington,* 466 U.S. 668, 695-696 (1984).

[32] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009)(quoting *Strickland*, 466 U.S. at 686).

19.     In the context of a plea challenge, it is not sufficient for the defendant to claim simply that his counsel was deficient. The defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[33]

20.     The burden of proving ineffective assistance of counsel is on the defendant.[34] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[35]

21.     For the reasons set forth below, the claims raised in the Amended Motion were all waived upon the entry of Defendant's plea, the first two claims are procedurally barred, and all his claims are without merit.

## Thomas' Claims Were Waived Upon the Entry of His Plea

22.     A defendant is bound by his answers on the guilty plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[36] In the subject action, the Truth-in-Sentencing Guilty Plea Form, Plea

---

[33] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hickman v. State,* 1994 WL 590495 (Del.) (applying *Strickland* to guilty pleas).

[34] *Oliver v. State,* 2001 WL 1751246 (Del.).

[35] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[36] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).

9

Agreement and plea colloquy reveal that Thomas knowingly, voluntarily and intelligently entered a guilty plea.

23. At the time of the plea, Thomas represented that he had reviewed the plea agreement and Truth-in-Sentencing Guilty Plea Form with his attorney and that he understood the Constitutional rights he was giving up by entering the plea, as well as the potential penalties he was facing by entering his plea.[37]

24. At the plea hearing, Thomas admitted his guilt to the three charges comprising the plea agreement. He admitted that while committing theft on two separate occasions he used or threaten the immediate use of force upon each of Sevil Kangel and Hareesh Nadendla with the intent to compel each to deliver up property and, in the course of doing so, displayed what appeared to be a firearm during commission of Robbery in the First Degree (2 counts). Thomas also admitted that he intentionally attempted to cause physical injury to Sakinder Singh by firing a handgun at his head during the commission of Assault in the Second Degree.[38]

25. Thomas further represented that neither his lawyer, the State, nor anyone else threatened or forced him to enter his plea.[39]

---

[37] April 30, 2018 Plea Transcript, at pgs. 6-8.

[38] April 30, 2018 Plea Transcript, at pgs. 9-12.

[39] Truth-in-Sentencing Guilty Plea Form, dated April 30, 2018.

26. The Court accepted Thomas' guilty plea only after finding that he entered into his plea knowingly, intelligently and voluntarily.[40]

27. As confirmed by the plea colloquy, Plea Agreement and Truth-in-Sentencing Guilty Plea Form, Thomas entered his plea knowingly, intelligently and voluntarily. He has not presented any clear, contrary evidence to call into question his testimony at the plea colloquy, Plea Agreement or answers on the Truth-in-Sentencing Guilty Plea Form.

28. Thomas' valid guilty plea waived his right to challenge any alleged errors, deficiencies or defects occurring prior to the entry of his plea, even those of constitutional proportions.[41]

29. All of Defendant's claims presented herein stem from allegations of misconduct and deficiencies which existed at the time of the entry of the plea. Therefore, all of his claims presented in the Amended Motion were waived when he knowingly, freely and intelligently entered his plea. [42]

---

[40] April 30, 2018 Plea Transcript, at pg. 19.

[41] *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Modjica v. State,* 2009 WL 2426675 (Del. 2009); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2004).

[42] See, *Mills v. State,* 2016 WL 97494, at *3 (Del.).

11

## Thomas' Claims Are Both Procedurally Barred and Without Merit

30. In addition to Thomas' claims having been waived, the first two claims are also procedurally barred, and all the claims are without merit. Because all three claims are intertwined, they will be discussed together.

31. Thomas alleges that there was judicial coercion during his plea colloquy (which forced him to accept the guilty plea) and that counsel was ineffective for failing to object to the alleged coercion.

32. In addition to having waived these claims, the claims for judicial coercion and abuse of discretion are procedurally barred. Thomas was required to raise any claims of judicial coercion or abuse of discretion on direct appeal if he genuinely believed the claims had merit. He failed to do so. Therefore, such claims are now procedurally barred.

33. The Defendant alleges that the statements made by the Court during his plea colloquy coerced or forced him to accept the guilty plea but the record shows that those statements were merely a recitation of the facts.

34. Defendant was charged with at least thirteen counts of each of First Degree Robbery, Possession of a Firearm during the Commission of a Felony, Possession of a Firearm by Person Prohibited, Wearing a Disguise during the Commission of a

Felony, and one count of Attempted Murder in the First Degree.  The chart below[43] reflects the potential range of incarceration time the Defendant faced if convicted of the most significant charges, depending upon whether he was found to be a habitual offender:

| Charge | If Declared a Habitual Offender | If Not Declared a Habitual Offender |
|---|---|---|
| First Degree Robbery (13 counts) | 3 to 25 years for each count (for a total of 39 to 325 years) | 25 years to life for each count (for a total of 325 years to 13 life sentences) |
| Possession of a Firearm during the Commission of a Felony (14 counts) | 5 to 25 years for each count (for a total of 70 to 350 years) | 25 years to life for each count (for a total of 350 years to 14 life sentences) |
| Attempted Murder in the First Degree (1 count) | 15 years to life | Life |
| Possession of a Firearm by Person Prohibited (13 counts) | 65 to 195 years for each count (for a total of 845 to 2535 years) | 15 years to life for each count (for a total of 195 years to 13 life sentences) |

35.    After the minimum mandatory and maximum prison time was reviewed with the Court by defense counsel during the April 27, 2019 hearing, the Court addressed the Defendant to make sure he had reviewed the plea agreement and to further explain the risks associated with going to trial.  The Court's colloquy included much discussion, but with respect to Defendant's specific claim of judicial coercion, the Court stated the following, in pertinent part:

---

[43] The information in the chart is derived from the Plea Colloquy Transcript, dated April 27, 2018, which was made part of the record by the Court.  Defense counsel also provided the information to the Defendant in writing prior to the hearings.

THE COURT: All right. So, Mr. Thomas, you have reviewed that plea agreement with Ms. Woloshin, correct?

THE DEFENDANT: Yes.

THE COURT: And you have had opportunity to discuss the pros and cons. And I want to make sure, because we are getting very close to trial and I want to be certain that you have read what Ms. Woloshin sent you, that she indicated she sent you, and that she's reviewed with the Court at the Court's insistence. And I want to make sure you understand that we're headed to trial and this will go to a jury. And if you're found guilty of these charges, you're looking at spending - - just through the minimum mandatories, you're looking at spending the rest of your life in prison. You will die in prison if you're convicted of all these charges. You will probably die in prison if you're only convicted on half, given the significant minimum mandatory attached to these charges. And once we go through a trial, once we start a trial, there's not going to be an opportunity to say, wait a minute, I've changed my mind. . .[44]

36.     The statement by the Court regarding the likelihood of the Defendant dying in prison if convicted of all or only a portion of the charges he was facing accurately reflected Defendant's circumstances. That is, if convicted of all or only one of the charges, Defendant would live out the rest of his natural life in jail. Given the accuracy of the statement, defense counsel would have no basis to object and such a

---

[44] April 27, 2018 Plea Transcript at 9-10.

14

statement cannot be reasonably construed as tantamount to judicial coercion on the part of the trial judge.[45]

37.    After further discussion regarding (i) the fact that the Court intended to deny a pending Motion to Sever as well as (ii) the Defendant's review of the State's evidence, the Court continued as follows:

> THE COURT: Good.  I just wanted to make sure.  So you have seen some of the evidence I'm anticipating the State's going to introduce.  And I am sure you and Ms. Woloshin have had discussions.  But now is the time, sir, where you need to decide whether you wish to accept the plea offer or reject it.  And if you reject it, we're heading to trial, and you will be presumed innocent unless and until proven guilty with proof beyond a reasonable doubt.  And if you accept it, you are pleading guilty to three charges, but avoiding significant jail time that would ensue if you are convicted by a jury.
>
> So this case has been going on quite some time, and I know you've had multiple conversations with Ms. Woloshin.  Now would be the time where you decide and you tell the Court your decision about whether or not you wish to accept this plea offer that would have you serving – well, if the Court follows the plea agreement, the State's planning to recommend that you serve no more than the minimum mandatory, which is 28 years, versus - - you heard the math.  What do you want to do?
>
> THE DEFENDANT:  I'm going to have to go to trial.

---

[45] Thomas cites two cases which purport to support the notion that the statements made by the judge constituted coercion sufficient to vitiate the voluntariness of his subsequent guilty plea, but neither case supports that proposition.  See *Miles v. Dorsey*, 61 F.3d 1459 (1995) (finding trial court's participation in plea negotiations did not render plea involuntary); *see also Brown v. Peyton*, 435 F.2d 1352 (1970) (holding that a judge's participation in a plea discussion is a factor which must be considered in determining whether a guilty plea is voluntary but does not *per se* render the plea involuntary).

> THE COURT: I'm sorry?
>
> THE DEFENDANT: I'm going to have to go to trial, Your Honor.[46]

38.     Immediately thereafter, counsel to the Defendant explained to the Court the reason why she believed Thomas was rejecting the plea. Specifically, Defendant wanted counsel to present the Court with a certain Motion to Suppress, but counsel advised Thomas that such a Motion could not be presented pretrial, but rather was an issue the jury would have to resolve relating to credibility of the police officers.[47] Counsel then advised the Court that Thomas wished to speak with her regarding the plea and requested that the Court take a brief recess to allow her time to do so.[48] The Court granted the requested recess and thereafter continued the hearing until April 30, 2019.[49]

39.     After continuing the hearing, the Court addressed the import of her decision.

> THE COURT: While I recognize it's inconvenient to the State, I also recognize that this is a very, very, important life-altering decision for him to make. And he has expressed a need for more time to consult with his counsel, and I think it's important that he has it and he has time to think about it, even though this is - - this case has been

---

[46] April 27, 2018 Plea Transcript at 13-14.

[47] April 27, 2018 Plea Transcript at 14-15.

[48] April 27, 2018 Plea Transcript at 15-17.

[49] April 27, 2018 Plea Transcript at 17-20.

going on for a long time, but I'm glad you're taking it seriously, as you should; right?

THE DEFENDANT: Yes. And I appreciate your giving me the time to figure out what I am going to do. It's not like something that I can easily say let's do it, you know, so I appreciate that. I want to thank you.[50]

40. On April 30, 2019, Thomas signed the plea agreement and the Truth in Sentencing Guilty Plea Form and the Court proceeded with the colloquy it had begun on April 27th.[51] Without any issue or further request for a trial, the Defendant unequivocally pled guilty to three counts in open court.[52]

41. Defendant's own words in his plea colloquy as well as his executed Truth in Sentencing Form bely his allegations here. For these reasons, the Court cannot find defense counsel's failure to object during the colloquy to be so prejudicial that there was a reasonable probability that, but for counsel's alleged deficiency, the Defendant would not have taken the plea. Moreover, the presiding judge's decision to continue the plea colloquy until April 30th was the antithesis of coercion. The Court was mindful and sensitive to the life-altering nature of such a decision and gave the Defendant the time he needed to consult with counsel to understand all the facts and circumstances of his case in order to make a fully informed decision to pled guilty.

---

[50] April 27, 2018 Plea Transcript at 20.

[51] April 30, 2018 Plea Transcript at 6-21.

[52] *Id.*

17

42.    It is important to note that in his original Rule 61 Motion Thomas also claimed that defense counsel was ineffective for failing to file the Motion to Suppress (which he abandoned in his Amended Motion).  Specifically, Defendant was of the view that the police did not have probable cause to follow him on the day he was ultimately arrested.  According to defense counsel, Thomas' argument that the police lacked probable cause to follow and arrest him was factually inaccurate and she explained the reasons such a Motion to Suppress was without merit to him numerous times prior to the plea.[53]  The police did, in fact, have reasonable, articulable suspicion to stop the Defendant based upon the similarities of all the robberies and the Defendant's unique physical characteristics as described by the victims.[54]  Moreover, even if a Motion to Suppress had been filed by counsel and granted by the Court with respect to the robbery charge on the day of the arrest, Defendant faced a multitude of other felony charges for earlier robberies.[55]  Therefore, filing a Motion

---

[53] Woloshin Aff. at 2.  On the day of Defendant's arrest on May 8, 2017, he had been under surveillance for the string of robberies that had been committed in the area.  The police saw his vehicle around the 300 block of North Union Street and a short time later a convenience store robbery was committed by a man meeting the Defendant's description near that location.  His car was followed for a long period of time and then eventually stopped by police at which time a handgun was found on the front passenger floorboard. In addition, the Defendant was dressed in the clothes described as being worn by the suspect of the earlier robbery.  D.I 63.

[54] *Id.* Defendant has a crippled right arm which can be seen on many of the surveillance videos and was a trait identified by several of the victims.  *See* State's Response to Defendant's Motion for Post Conviction Relief, pg. 5, D.I. 64.

[55] Woloshin Aff. at 2.  D.I 63.

to Suppress to argue the police lacked probable cause to follow and arrest the Defendant under such circumstances did not fall below the standard of reasonableness and would not have changed the outcome of the proceedings. Nor would it have resulted in a change in counsel's defense strategy or her recommendation to Defendant to take a plea offer.

43. As both the State and defense counsel contend, the evidence against the Defendant was overwhelming. Many of the alleged offenses were caught on surveillance tape. His face can be clearly identified in photos taken in connection with the robberies and surveillance footage of the robberies.[56] The surveillance videos also showed a person pointing a gun at the victims.[57] Defense counsel filed a Motion to Sever offenses, but advised the Defendant that it was highly unlikely the Court would grant that motion, due to the evidence that all the robberies were "carried out in a similar manner and the videos and descriptions show that they were carried out by the same person."[58] As previously noted, on the record during the hearing on April 27, 2018, the Court indicated it was not granting the Motion to Sever.

---

[56] Woloshin Aff., Exh. A. D.I. 63.

[57] *Id.*

[58] *Id.*

44. Defense counsel sent the Defendant a thorough overview of the indictment, the potential penalties he could face as both a habitual offender and non-habitual offender, the State's evidence, and her assessment of Defendant's best option moving forward.[59]

45. Based on the weight of evidence against the Defendant, defense counsel concluded from a strategic point of view that if Defendant proceeded to trial, he would be convicted of all charges.[60]  Moreover, Defendant was eligible to be sentenced as a habitual offender thereby making his situation even more perilous.[61]

46. After a comprehensive review of the State's evidence, defense counsel concluded that the most prudent defense strategy was to attempt to reduce the significant amount of jail time Defendant faced if convicted at trial by negotiating a plea agreement.[62]  Such a strategy was "objectively reasonable" under the circumstances given the significant number of indicted felony charges Defendant was facing and the strength of the State's evidence.

47. "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options' that decision is 'virtually unchallengeable'

---

[59] *Id.*

[60] *Id.*

[61] Woloshin Aff., Exh. A.

[62] Woloshin Aff. at 1.

and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[63]

48. The Court ultimately imposed a sentence of 28 years at Level V, which is a substantially better result than the potential life imprisonment that Defendant could have faced had he proceeded to trial and been unsuccessful.

49. Based on the foregoing, the Court finds that counsel's performance was objectively reasonable under the circumstances and, as such, Defendant fails to establish the first prong of the *Strickland* test.

50. With respect to the second prong of the *Strickland* test, Defendant has also failed to demonstrate actual prejudice. "It is not enough to 'show that the errors had some conceivable effect on the outcome of the proceeding,'"[64] the defendant must show a reasonable probability of a different result but the alleged errors of counsel.[65]

51. Although the Court finds that defense counsel did not commit any errors, as previously noted, a voluntary guilty plea constitutes a waiver of any alleged errors

---

[63] *Ploof v. State*, 75 A.3d 840, 852 (Del. Super. 2013) (citing *Strickland v. Washington,* 466 U.S. 668, 690-91 (1984).

[64] *Harrington v. Richter*, 131 S.Ct. 770, 787 (quoting *Strickland*, 466 U.S. at 693).

[65] *Strickland*, 466 U.S. at 695.

or defects occurring prior to entry of the plea.[66]  After pleading guilty, a defendant cannot reopen his case to make claims that do not address guilt.[67]

52.     "[A] Defendant's statements to the Superior Court during the guilty plea colloquy are presumed to be truthful."[68]

53.     Here, Thomas voluntarily entered a guilty plea after the Court conducted a colloquy with him prior thereto.  Defendant signed a Truth in Sentencing Plea Form and admitted guilt in open Court.  The Court, in turn, accepted the plea as being offered knowingly, intelligently and voluntarily.  As such, the Defendant waived any alleged defects of counsel that occurred prior to the entry of the plea and, therefore, there can be no finding of prejudice under *Strickland*.

54.     Moreover, Defendant's acceptance of the plea was a rational decision to avoid a trial where the downside could have resulted in a significantly greater prison sentence if convicted.  Defendant obtained a benefit by entering into the plea in that the lion's share of the charges against him were *nolle prossed* and the State agreed to ask for no more than the minimum sentence required by the charges for which he plead guilty.  Indeed, in light of the facts and circumstances of this case, it was

---

[66] *Cooper v. State*, 2008 WL 240404, at 1* (Del. June 16, 2018); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003).

[67] *Brown v. State*, 108 A.3d 1202 (Del. 2015).

[68] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

unlikely Defendant would have prevailed at trial and the plea was his best option. Accordingly, the Court finds that Defendant has failed to meet the *Strickland* test with respect to his claims of a coerced plea.

55. In conclusion, Defendant's plea represented a rational choice given the pending charges, the evidence against him, and the possible sentences he was facing. Defendant entered into his plea knowingly, intelligently and voluntarily. The Court finds that the trial judge did not coerce Thomas into taking a plea or otherwise abuse its discretion nor was counsel deficient in any respect in her representation of Defendant. Thomas' claims are without merit.

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

/s/ Janine M. Salomone
The Honorable Janine M. Salomone


cc: Prothonotary
Timothy Maguire, Esquire
Natalie Woloshin, Esquire
Mr. Kori Thomas, *pro se*